CITY OF CREVE COEUR, a Municipal Corporation, Plaintiff-Respondent,

v.

Jack K. HUDDLESTON et al., Defendants,

Edmund T. Allen et al., Intervenors-Defendants-Appellants,

County of St. Louis, Missouri, et al., Intervenors-Defendants-Respondents.

No. 32438.

St. Louis Court of Appeals.

Missouri.

May 17, 1966.

Motion for Rehearing or for Transfer to Supreme Court Denied June 14, 1966.

Application to Transfer Denied Sept. 12, 1966.

William J. Becker, Clayton, Richard O. Funsch, St. Louis, for appellants.

William H. Wyne, Jr., Wyne & Delworth, Clayton, for plaintiff-respondent.

Donald J. Stohr, County Counselor, Thomas W. Wehrle, Lawrence Bannes, Associate County Counselors, for intervenors-defendants-respondents.

CLEMENS, Commissioner.

The plaintiff City of Creve Coeur, a city of the fourth class in St. Louis County, sought a declaratory judgment under the so-called Sawyers Act (§ 71.015, V.A.M.S.), authorizing it to annex an adjoining 700-acre tract. Approximately a hundred representative residents of the area to be annexed were named as defendants. By leave, St. Louis County intervened as an additional defendant. Appellants Edmund T. Allen and Millstone Construction Company, Inc., hereafter called defendants, also intervened, and they alone appeal from the declaratory judgment authorizing the annexation.

The principal issue raised here is the reasonable necessity of the annexation. A secondary issue is whether the voters of the area to be annexed approved the annexation at a "separate election" by voting at one of the regular polling places within the City. Still another point is whether the annexation proceedings are nullified by an agreement between the City and St. Louis County whereby the County withdrew its opposition to the annexation upon the City's promise to retain the County's zoning regulations then in effect in the area to be annexed.

This annexation project got under way late in 1962, when fifty residents of the area to be annexed petitioned the City's Board of Aldermen for annexation to the City. Thereafter, in February, 1963, the City's Board of Aldermen passed a resolution declaring that the area to be annexed would be a reasonable extension of its boundaries, asserting that the City could furnish municipal services therein, and authorizing this action for a declaratory judgment. On October 28, 1963, the Board of Aldermen enacted an ordinance calling an election as required by §§ 71.860 through 71.920, V.A.M.S., which had become effective October 13, 1963. The St. Louis County Board of Election Commissioners conducted an election on December 3, 1963, and later certified these results:

"Voters of the City of Creve Coeur:
 For annexation . . . . 163
 Against annexation . . . 27
"Voters of the Unincorporated Areas:
 For annexation . . . . 55
 Against annexation . . . 34"

Thereafter, on April 27, 1964, the case went to trial in the Circuit Court of St. Louis County, Division 9, Honorable George W.

Cloyd presiding. The case was taken under advisement and on October 19, 1964, the trial court filed its findings of fact and conclusions of law, and entered judgment authorizing the proposed annexation. Upon denial of defendants' after-trial motion, they appealed to the Supreme Court. It found that it was without jurisdiction and transferred the case to this court.

We first note the scope of our appellate review. We must view the case upon both the law and the evidence, weigh the evidence, and render such judgment as the trial court ought to have given. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Civil Rule 73.01(d), V.A.M.R.; City of Creve Coeur v. Patterson, Mo.App., 313 S.W.2d 739.

On the primary issue of reasonableness we will state the evidence that credibly supports the trial court's findings, and the defendants' evidence in opposition thereto. Plaintiff's evidence came from its officials and from residents of the area to be annexed. Defendants' evidence came from a consulting engineer and from residents of the area to be annexed. Parenthetically, we note that the witnesses were sharply divided on one proposition. Plaintiff's witnesses wanted to keep the existing zoning regulations that were in effect by the ordinances of St. Louis County, which regulations substantially limit future development of the area to be annexed to single-family residences. These witnesses believed that annexation by the City would maintain the status quo. On the other hand, the defendants' witnesses were opposed to the existing zoning limitations and favored a change that would permit the use of their properties for high-rise apartment construction. They believed that annexation by the City would stifle their plans to induce the County to rezone their properties from single- to multiple-family residences.

The City of Creve Coeur is straining at the seams of its six-square-mile area. Therein are numerous public buildings, an 8-acre municipal park, a golf course, a college, and the spacious grounds of the Monsanto Chemical Company. The City's commercial area lies astride Olive Street Road at its northern boundary. Creve Coeur is bounded by other municipalities to the north, east, and south, so it may expand only to the west and southwest, where the 700-acre area to be annexed is located. In the past decade the City's population has grown from 2,000 to 7,000. Its area is used principally for 1,750 single-family residences on lots averaging half an acre in size. In 1962 there were 129 new homes built in the City, and 135 were added in 1963. Although there were still some vacant lots in the City, it could be reasonably anticipated that more than a hundred new homes would be built in the next two years, leaving few homesites and no tracts large enough to be subdivided. From all this we find that the City has shown a reasonably immediate need for extension of its boundaries.

The city government is broadly organized. It functions under a mayor and four aldermen, and also has a municipal judge, a marshall, a collector and a clerk. The City employs an attorney and an engineer. The Board of Aldermen is aided further by a five-member planning and zoning board, a three-member board of architectural conformity, a board of adjustment, a board of police commissioners, and numerous committees. There is a building code, enforced by a committee that supervises the issuance of building permits and the inspection of all construction.

The City is financially affluent. Since 1950 its assessed valuation has risen from two and a half million to twenty-five million dollars, yet its tax rate has remained constant, at 30¢ per $100 assessed valuation. In 1963 its expenditures, in round numbers, were $46,000 for streets, $52,000 for police, $43,000 for health and welfare, $16,000 for the city park, $86,000 for building its city

hall, and $41,000 for administration. At the end of that year there was a cash balance of $114,000, and no bonded indebtedness.

The City's services are performed by sixteen full-time employees. There are eight police officers, most with professional training, and all are deputy sheriffs of St. Louis County. At least two of them are on duty around the clock. Four employees are engaged in the maintenance of public and private streets and the tri-weekly disposal of trash and garbage. Four clerical employees staff the City's offices.

Municipal facilities of the City include a new city hall housing the police head-quarters, the jail, and administrative offices. There are four fully equipped police cars, three trucks, two tractors, and miscellaneous equipment for street and park maintenance. Additionally, the City furnishes street lighting, snow clearing and cindering services, and dog and mosquito control. School, library, fire protection, water and sewer facilities are furnished by other municipal units, which also serve the area to be annexed. All services now afforded by the City in its own area can be extended without delay to the area to be annexed.

The area to be annexed is a partially developed 700-acre tract at the City's southern and western boundaries. It is bounded by the City and the municipalities of Westwood and Town and Country along its northern, eastern and southern sides. All of the western and a part of the northern sides are bounded by the unincorporated, lightly developed areas of St. Louis County. The eastern part of the area to be annexed, adjoining the City, has been developed. In its southeast corner is a four-acre tract owned by the defendants. (They also own an adjacent four-acre tract to the south, lying in the City of Town and Country.) The defendants have been trying to get their eight-acre tract rezoned from one-family residential use to high-rise apartment use. Adjacent to defendants' tract in this southeast corner of the area to be annexed are four one-acre-plus homesites.

In this eastern part of the area to be annexed, nearest to the City, are also located the 123-acre tract of St. John's Mercy Hospital, the 25-acre tract of Covenant College, the 9-acre tract of Temple Emanuel, the campuses of two private schools, and a 70-acre tract taken for the right-of-way of a proposed highway. Just to the west of this built up area there are two subdivisions, of seventeen and twenty-five acres, which are substantially developed with one- and two-acre homesites. The western part of the area to be annexed is generally undeveloped. It does have a few small acreage homesites along its principal east-west thoroughfare, Conway Road, but the remaining 200 plus acres are in agricultural use, suitable for residential development.

St. Louis County municipal units afford some services to both areas. Both the City and the area to be annexed have water supply and fire protection from other municipal corporations. The Metropolitan St. Louis Sewer District serves the City and the eastern one-third of the area to be annexed. Zoning and building requirements are set by St. Louis County ordinances. The County Police Department patrols Conway Road in the area to be annexed, but coverage is light since there is only one on-duty police officer for every hundred square miles of St. Louis County. Public roads in the area to be annexed are reasonably maintained by the County Highway Department, but snow removal lags. There is no public garbage or trash removal service in the area to be annexed. Comparing the municipal services, we find that annexation to the City can give the area to be annexed the benefit of municipal government and improved services in police protection, street maintenance, sanitation, health and welfare.

▆▆▆ We look now to the judicial role in the municipal-legislative process of annexation. Neither the trial court nor this court has a primary responsibility to determine the advisability or propriety of a proposed annexation. That is a political decision resting within the legislative discre-

tion of a municipality. Judicial review of this discretion is limited to a determination of the reasonableness of the legislative action; and if there is a sufficient showing of reasonableness to make that question fairly debatable, then the legislative decision is conclusive. City of St. Joseph v. Hankinson, Mo., 312 S.W.2d 4 [7]; Julian v. Mayor, Councilmen and Citizens of the City of Liberty—Mo., 391 S.W.2d 864 [3]. In reaching our decision we may not overlook —and we have not—the principle that in judicially determining the issue of reasonableness we must consider the comparative benefits and detriments to both the City and the area to be annexed. City of Olivette v. Graeler, Mo., 338 S.W.2d 827 [16]; City of Aurora v. Empire Dist. Elec. Co., Mo.App., 354 S.W.2d 45 [4].

Defendants contest the reasonableness of this annexation by citing the 1958 case of City of Creve Coeur v. Patterson, Mo.App., 313 S.W.2d 739, wherein this court denied a proposed annexation of an industrial area to the north side of Creve Coeur. Neither the City's present area nor this area to be annexed is similar to those in the 1958 case. In the ensuing eight years there has been an expansion of the City's area, population, financial resources and municipal services. In the earlier case there was no showing of ability to furnish municipal service to the area then proposed to be annexed, and at 313 S.W.2d 1. c. 744 we said that "[t]he only reason advanced for taking in the industrial area was a frank admission that they wanted it for the taxes that it would yield." The Patterson case is inapplicable here.

■ We have considered the City's past and probable future growth, its restrictive boundaries, its ability to furnish normal municipal services to its own citizens and to those of the area to be annexed, and the quasi-municipal nature of the area to be annexed. The City's legislative decision to annex raises—at the very least—a fairly debatable question as to its reasonableness and necessity. There being no showing that

the City acted arbitrarily or oppressively in its legislative capacity, we may not interfere judicially. We find the issue of reasonableness in favor of the City, and we move on to consider the other two points raised by the defendants.

■ Their brief attacks the judgment on the ground that it was not preceded by *separate* elections as required by § 71.870, V.A.M.S. This, on the theory that voters of the area to be annexed cast their ballots at one of the two polling places within the City rather than at a place within the area to be annexed. By its petition the City pleaded that the annexation had been approved at separate elections by the voters of the City and by those of the area to be annexed. Defendants-appellants Allen and Millstone admitted that allegation in their answer. So far as they are concerned, the issue dropped out of the case. There is nothing for review. Civil Rule 83.13 (a) (b), V.A. M.R.

■ The last point in defendants' brief concerns an unpleaded agreement between the City and St. Louis County whereby the County withdrew its opposition to the annexation upon the City's promise not to liberalize the zoning restrictions in the area to be annexed. The "Points and Authorities" section in defendants' brief contains only abstract statements of law about public policy being opposed to the City's "bartering away" its legislative power. This does not comply with Civil Rule 83.05 (e), V.A.M.R., which declares that in appellants' briefs the points relied on shall "briefly and concisely state what actions or rulings of the Court are claimed to be erroneous and briefly and concisely state why it is contended the Court was wrong in any action or ruling sought to be reviewed." Further, the legality or illegality of the agreement complained of was not raised in the trial court and no ruling thereon was requested or made. Nothing is preserved for our review.

Because these last two points are not properly preserved for review, we have

considered them in the light of Civil Rule 79.04, V.A.M.R., which empowers us to consider plain errors affecting substantial rights. We find no manifest injustice or miscarriage of justice as to either point.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

WOLFE, P. J. and ANDERSON and RUDDY, JJ., concur.