**CITY OF SALISBURY, Missouri, a Municipal Corporation, Plaintiff-Respondent,**

**v.**

**Gene NAGEL et al., Defendants-Appellants.**

**No. 24599.**

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

Robert Devoy, Brookfield, James J. Wheeler, Keytesville, for appellants.

George S. Thompson, Salisbury, for respondent.

CROSS, Judge.

Plaintiff, City of Salisbury, a city of the forth class, brought this action pursuant to Section 71.015 V.A.M.S., the so-called Sawyers Act, seeking a declaratory judgment authorizing it to annex adjoining territory consisting of three small tracts aggregating approximately 131 acres. The cause was instituted as a class action under provisions of Section 507.070 V.A.M.S. against twenty defendants alleged to be fairly representative of all the inhabitants and landowners of the area sought to be annexed. Thereafter by leave of court two additional parties intervened as defendants. Upon trial the court found the issues generally in favor of plaintiff and made specific findings (among others) "that this is a class action and that the defendants named herein and the defendant interveners joined herein provide adequate representation of all that constitutes a class who will be af-

fected by this action as provided by Section 507.070 VAMS.", and that "the annexation of the above described areas is reasonable and necessary to the proper development of the City of Salisbury and that said City of Salisbury has the ability to furnish normal municipal services to the afore-mentioned annexed areas within a reasonable time;". In conformity with those findings judgment was entered authorizing annexation of the three proposed areas. Defendants have appealed.

■ The appeal raises issues as to whether the defendants named and who intervened provided adequate representation of all members of a class affected by the action, whether the trial court should have stricken plaintiff's pleadings for failure to answer interrogatories, whether passage of the resolution for annexation was lawful, and whether the trial court's finding that the proposed annexation was reasonable and necessary to the proper development of the city is supported by the evidence. In determining these questions we must view the case upon both the law and the evidence, weigh the evidence, and render such judgment as the trial court ought to have given. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Civil Rule 73.01(d), V.A.M.R.; City of Creve Coeur v. Huddleston et al., Mo.App., 405 S.W.2d 536.

■ As their first point defendants contend the trial court erred by including in its findings the following recital: "On December 8, 1965, the day said cause was set for trial, there appeared before the court plaintiff represented by its attorney, George S. Thompson, and defendants Richard Gesling, Carl Freese, Gene Nagel, Charles F. Tadlock, Audra McClain, George Edward Williams, George T. Roling, Anna Grigsby, William Leber, Neil Davis and William Randolph, represented by their attorney, James J. Wheeler, *and all other defendants were duly served or voluntarily entered their appearances but did not appear in person or by counsel and did not actively participate in the trial."* (Our italics.) Defendants insist that the quoted recital "is not supported by the evidence or this record," in that "There is nothing in the record to show that any of the other defendants (those not specifically named), and certainly not any defendants representing a class, were either served or voluntarily entered their appearance." Defendants are reminded that it is not the respondent's burden to show that the finding in question is supported by the record. To the contrary, it is presumed that the finding is correct. Under that presumption defendants, as appellants, have the burden of affirmatively establishing the alleged error. 3 Mo.Digest 1, Appeal and Error, ☞900–901. The transcript before us contains no entry or recital that is incorrectly reflected by or inconsistent with the trial court's finding. Consequently we rule that no error has been shown with respect thereto.

Defendants complain the court erred to their prejudice by refusing to strike plaintiff's pleading "for failing to answer interrogatories." The interrogatories in question are here quoted:

"29. State the total bank deposits in the City of Salisbury in the years of: (a) in 1900 (b) in 1910 (c) in 1920 (d) in 1930 (e) in 1940 (f) in 1950 (g) at the present time.

30. State the total saving deposits in the City of Salisbury in: (a) in 1900 (b) in 1910 (c) in 1920 (d) in 1930 (e) in 1940 (f) in 1950 (g) at the present time.

31. State the total number of bank clearings in: (a) in 1900 (b) in 1910 (c) in 1920 (d) in 1930 (e) in 1940 (f) in 1950 (g) at the present time.

34. State the total number of electricity users in: (a) 1920 (b) 1925 (c) 1930 (d) 1935 (e) 1940 (f) 1945 (g) 1950 (h) 1955 (i) the present time.

35. State the total number of water users in the years of: (a) 1920 (b) 1925 (c) 1930 (d) 1935 (e) 1940 (f) 1945 (g) 1950 (h) 1955 (i) at the present time."

Plaintiff responded to the quoted interrogatories in the first instance by answers as follows:

"29. Information here sought not information peculiar to city and such information is as available to defendants as to plaintiff.

30. See 29 above.

31. See 29 above.

34. (a) unknown (b) unknown (c) unknown (d) unknown (e) unknown (f) unknown (g) unknown (h) unknown (i) unknown.

35. (a) unknown (b) unknown (c) unknown (d) unknown (e) unknown (f) unknown (g) unknown (h) unknown (i) unknown."

Thereafter, on motion of interrogating defendants, the trial court ordered that plaintiff file more specific answers, pursuant to which plaintiff filed, on September 28, 1964, its "Second Answers" which included the following:

"In answer to interrogatory No. 29 plaintiff says it does not know the answers to said questions a, b, c, d, e, f, and g.

"In answer to interrogatory number 30 plaintiff says that it does not know the answers to questions a, b, c, d, e, f and g.

"In answer to interrogatory number 31 plaintiff says that it does not know the answers to questions a, b, c, d, e, f, and g.

"In answer to interrogatory number 34 plaintiff states that it does not know the answers to questions a, b, c, d, e, f, g, h, and i. Further answering plaintiff states that at the present time the Board of Public Works mails out 980 statements to electricity users.

"In answer to interrogatory number 35 plaintiff states that it does not know the answers to paragraphs a, b, c, d, e, f, g, h and i. Further answering plaintiff states that the Board of Public Works sends statements to approximately 750 water customers."

Thereafter defendants filed and the court overruled their motion to strike plaintiff's pleadings on the ground that the answers plaintiff had filed to the interrogatories submitted to it, inclusive of those numbered 29, 30, 31, 34 and 35, did not comply with the rule which requires full and complete answers to interrogatories.

 In argument of this point defendants have virtually abandoned complaints directed against the sufficiency of plaintiff's answer to interrogatories numbered 29, 30 and 31. They suggest no reason why the trial court should have taken punitive action against plaintiff because its answers to those questions went no further than to disclaim any knowledge relative to the amount of bank deposits, savings deposits and bank clearings in Salisbury at the "present time" or at various times during the previous sixty-five years. For that matter, it is clear to us that the trial court would have exceeded its authority in requiring additional answers or striking plaintiff's pleadings on the ground that the answers were insufficient. Civil Rule 56.01 does not require a party to furnish information upon interrogation other than such as is "available" to him. The information necessary to answer Interrogatories Nos. 29, 30 and 31 "more fully," (or even to any extent at all) was not reasonably available to plaintiff. The law does not require or permit plaintiff city to perform the ultra vires function of compiling and preserving statistical financial data of the kind about which defendants inquire. Further answers could have been made only on the basis of information obtained by interviewing the officers and employees of depository banks and other financial institutions which are

strangers to this suit, or by making an investigation into their books and records. "The court can not properly require a party to conduct such an investigation and any attempt to do so is in excess of the jurisdiction of such court." State ex rel. Mid-America Pipeline Company v. Rooney, Mo.App., 399 S.W.2d 225.

■ Nor is it our opinion that any portion of plaintiff's answers to interrogatories 34 and 35 constitutes "refusal of a party to answer any interrogatory" as basis for an order of court striking plaintiff's pleadings. Although, as owner of municipal electric and water systems, the city could be expected to have reasonably current records showing the number of its own electric power and water consumers, it may not be assumed, or reasonably expected, that when the city filed answers to the interrogatories in 1964 there were any records still in its possession or information was available to it to show the number of such customers during the years from 1920 through 1950. The city's answers disclose the total number of electricity and water patrons "at the present time," i. e., as of September 28, 1964. In the same answers it is stated, under oath, that the city does not know the total number of electricity and water users in 1920, 1930, 1935, 1940, 1945, 1950 and 1955. Defendants do not attack the veracity of these verified answers. We therefore accept them as representations of the truth conclusively establishing that the information sought was not available to the city. Thus the matter is foreclosed. See State ex rel. Mid-America Pipeline Company v. Rooney, supra, and cases there cited.

Defendants challenge the legal sufficiency of the resolution to annex additional territory on the ground that no entry was made on the journal or in the minutes of proceedings of the board of aldermen to show the "ayes" and "nays" voted on the proposition—a procedure prescribed by Section 79.130 V.A.M.S. as requisite to enactment of a valid ordinance by a city of the fourth class. In fact the ayes and nays were not recorded, but the minutes of the meeting of the board at which the resolution was presented recite that all members of the board were present except one, and that the resolution to annex was adopted by a vote of 5 to 0.

Defendants argue that the terms "resolution" and "ordinance" are interchangeable and that a resolution is not effective unless passed in the manner provided by Section 79.130 V.A.M.S. for the enactment of ordinances. Defendants' view that a resolution and an ordinance are the same thing is not shared by Missouri courts which have considered the question. In City of Cape Girardeau v. Fougeu, 30 Mo.App. 551, the court noted: "According to ordinary parliamentary practice, a resolution is a very different thing from a law or an ordinance. A resolution is merely a suggestion or direction in writing, concurred in by the two houses of the assembly, if there be two houses, or passed by one house, if there be but one, and not submitted to the executive for his approval. A resolution is ordinarily passed without the forms and delays which are generally required by constitutions and municipal charters as prerequisites to the enactment of valid laws or ordinances. It need be read but once and may be passed by a *viva-voce* vote, without calling the ayes and noes, whereupon, when engrossed, it becomes operative." In Haskins v. City of DeSoto, Mo.App., 35 S.W.2d 964, the court held as follows: "Now it will not do to say, as defendant seems to argue, that a municipal corporation can act only through an ordinance, for the general law is quite to the contrary. Of course, in the large majority of instances the statutes do require the formality of an ordinance to warrant a city in exercising the power conferred upon it; and, where the statute so provides, there is no doubt that an ordinance authorizing it is a necessary condition precedent to the making of a valid and enforceable municipal contract. * * * However, the authorities hold that, in the absence of such statutory require-

ments, that is, when the mode of contracting is not prescribed by statute or charter, as the case may be, no ordinance or resolution is necessary to the making of the contract, nor is it even essential that it be in writing. 44 C.J. 97; 19 R.C.L. 1060."

■ Recent decisions of the Supreme Court have construed the term "resolution" as it is used in the Sawyers Act. In Julian v. Mayor, Councilmen and Citizens of the City of Liberty, Mo., 391 S.W.2d 864, the Supreme Court commented and ruled as follows: " 'The term "resolution" denotes something less formal than the term "ordinance"; generally it is a mere expression of the opinion or mind of the council concerning some matter of administration coming within its official cognizance, and provides for the disposition of a particular item of the administrative business of a municipal corporation. * * * A resolution is not a law, and in substance there is no difference between a resolution, order and motion.' 37 Am.Jur. Municipal Corporations § 142; 62 C.J.S. Municipal Corporations § 411; Vol. 5 McQuillin, Municipal Corporations, § 15.02; Baker v. Lake City Sewer Dist., 30 Wash.2d 510, 191 P.2d 844; Mitchell v. Parshall, N. D., 108 N.W.2d 12; Kalamazoo Municipal Utilities Association v. City of Kalamazoo, 345 Mich. 318, 76 N.W.2d 1, 61 A.L.R.2d 583. In the absence of some express requirement, a resolution need not be in any set or particular form, 37 Am.Jur. Municipal Corporations § 145, and while a resolution 'is a very different thing' from an ordinance, City of Cape Girardeau v. Fougeu, 30 Mo.App. 551, 556, and will not suffice when action on the part of a municipality is required to be taken by ordinance, Schmoll v. Housing Authority of St. Louis County, Mo., 321 S.W.2d 494, 499, every ordinance necessarily includes all the essential elements of a resolution.

"Turning now to the language of the Sawyers Act, it provides that whenever the governing body of any city has adopted a resolution to annex, or stated another way, whenever the governing body of any city has expressed its intention to annex any unincorporated area of land, then 'before proceeding as otherwise authorized by law or charter' the declaratory judgment provided for therein shall be obtained. We consider it to be immaterial how that intention to annex is expressed, that is, by a resolution denominated as such, by a motion or order of the governing body of the city, or by an ordinance, which is more than but includes all the elements of a resolution. The name given to the action of the governing body is not the controlling factor. The clearly expressed intent of the Legislature in enacting the Sawyers Act was that any city to which the Act is applicable shall not proceed beyond the expression of intent to annex until it obtains the declaratory judgment therein required, and to hold otherwise would be to give an extremely technical construction to the words used, and would result in thwarting the obvious purpose of the statute. We hold in this case that the Sawyers Act by its terms is applicable to the City of Liberty, and that once the governing body thereof announced its intention to annex an unincorporated area of land, regardless of how that intention was expressed, the requirement of the Sawyers Act became mandatory, and constituted a condition precedent to the exercise of the delegated legislative authority to annex an unincorporated area." Also see City of Hannibal v. Winchester, Mo.Sup., 391 S.W.2d 279.

■ We are persuaded by the foregoing authority to rule in this case that the mandatory formalities of procedure prescribed by Sec. 79.130 for passage of an ordinance have no application to the passage of a resolution and that therefore the recording of the ayes and nays was not prerequisite to the validity of the resolution here involved.

■ Defendants' main point is a contention the trial court erred in finding that the proposed annexation was reasonable and necessary to the proper develop-

ment of the city when there was no evidence to support such a finding. The question presented does not require this court to determine the advisability or propriety of the proposed annexation, since that is a matter of political decision resting within the legislative discretion of the city. "Judicial review of this discretion is limited to a determination to the reasonableness of the legislative action; and if there is a sufficient showing of reasonableness to make that question fairly debatable, then the legislative decision is conclusive. City of St. Joseph v. Hankinson, Mo., 312 S.W.2d 4(7); Julian v. Mayor, Councilmen and Citizens of the City of Liberty—Mo., 391 S.W.2d 864(3); In reaching our decision we may not overlook—and we have not—the principle that in judicially determining the issue of reasonableness we must consider the comparative benefits and detriments to both the City and the area to be annexed. City of Olivette v. Graeler, Mo., 338 S.W.2d 827(16); City of Aurora v. Empire Dist. Elec. Co., Mo.App., 354 S.W.2d 45(4)." City of Creve Coeur v. Huddleston, Mo.App., 405 S.W.2d 536.

It is not feasible or necessary to digest in detail the large volume of evidence before us. Its substance insofar as it relates to our decision is here set out. The population of Salisbury in 1960, as shown by the census of that year, was 1787, an increase of 6% since the preceding census. The population figure for the current year was not available. The city's municipal services include: an electric light and power system; a water system; a sewer system, inclusive of a disposal lagoon; a police department staffed by three regular and two extra police officers; a fire department with two fire fighting units and a regularly employed chief; a street department employing three men; a public library; and, a public park with recreational facilities. The city is in sound financial condition, has a current tax rate of $1.50, and has no need for or prospect of incurring additional bonded indebtedness. The downtown business district extends three blocks. It contains several vacant business buildings, none of which appear suitable for modern commercial purposes, being at least sixty years old and no wider than thirty feet. There are approximately eighty "vacant" lots in the city, inclusive of all properties which occupy more than one "lot" as that term is used in legal descriptions. There is no evidence to indicate whether any are available for sale. Although industries are presently seeking sites for location in the area, there appear to be none within the city suitable for industrial purposes. Highway 24 describes an arc generally around and close to the present northwestern and northern boundaries of the city. The Wabash Railroad lies south of Highway 24 and bisects the northern portion of the city.

The principal portion of the area proposed for annexation lies generally in a curve along both sides of Highway 24 as it sweeps around the northwestern and northern boundaries of the city. During the last twenty years, and particularly the last ten years, this area has undergone a very substantial development for commercial and industrial purposes. At the time of the trial a total of at least thirty-seven business establishments had been built and were operated in the area, including five restaurants; seven automobile service stations; three garages; three implement companies; two food markets; three veterinarian establishments, one being a small animal hospital; a laundry service; a feed store; a liquor store; a bowling alley; a rural gas service; a motel; a produce business; a junk and salvage yard; a sporting goods store; a trading post; a gas and oil bulk plant; a fertilizer plant; a trailer court; and, a furniture store. There are at least two suitable industrial sites in the proposed area, one of which has been under contract option. A substantial number of residences have been built in the area.

The city's light and power service is presently available to the entire proposed area. Water service is available to consumers in the area who extend water lines

from the city's mains and pay a small monthly service fee. In some instances city sewers are in use by patrons in the area. All of the businesses, with one exception, and all of the houses within the area, receive one or more of the utility services furnished by the city (water, electricity or sewer) and several businesses enjoy all three services. The city presently furnishes to the proposed area, without cost, municipal services consisting of fire protection, police protection, and part time street maintenance, and provides street lighting in some portions of the area.

The evidence shows that the three utility services (electricity, water and sewers) are adequate to supply all of the proposed area in addition to the city itself. The water system is modern, is sufficiently capable of supplying "two to three times the need," and its mains at the present time are within fifty feet of all potential users in the area. The sewer system is also modern and adequate to serve both the city and the area, and will be available to all area users. Other advantages would accrue to the proposed area from annexation. The city would be enabled to furnish improved police services, such as more frequent patrolling. If annexed, the area would receive better fire protection because both of the city's fire trucks would then be available to it, whereas presently only one of the fire trucks is permitted by ordinance law to leave the city limits. Street lighting would be augmented to the area's needs. All of the city's street maintenance equipment would be available to service the streets of the area. No additional equipment is needed. By the foregoing evidence the city has satisfactorily demonstrated its ability to furnish normal municipal services to the proposed annexation area. City of St. Ann v. Buschard, Mo.App., 356 S.W.2d 567.

Defendants' principal prong of defense is argument that "much of the area sought to be annexed is suited only for agricultural purposes." This statement does not accurately reflect the record. The "agricultural" lands referred to consist of one three acre tract belonging to one Steinebach on which the owner feeds fifteen head of hogs and four calves; a small irregular tract lying along Highway 24 belonging to defendant Anna Grigsby; also two tracts lying alongside Highway 24 belonging to defendant Williams, one of which is a hog pasture, the other a field "you can cultivate" but which is not said to be in cultivation. We do not believe that any of the above described tracts should presently be classified as "agricultural" lands. As for the Williams tracts, for the past twenty years he has sold, from lands similarly located in the area and of like nature, numerous smaller tracts for commercial building sites at prices ranging from $1,000.00 to $1,500.00 an acre. It is apparent from his testimony that he values his remaining holdings at similar figures. The Steinebach and Grigsby parcels are similar in nature and location, i. e., immediately fronting upon Highway 24, and there is no reason to believe that their highest and best use would be other than for building sites in the area and that their market value for that purpose would be any less than the above prices received by Williams for his acreage. The evidence shows that farm land in the Salisbury area that is truly agricultural in its nature and use has a market value of no more than approximately $300.00 an acre. On this question the Supreme Court said in State ex inf. Major v. Kansas City, Banc, 233 Mo. 162, 134 S.W. 1007: "If land near a city is being held for prices far above any rural use, and men in that city are willing to pay for it prices far in excess of any rural use, that land is as fairly within the future development of the city as the judgment of those who are most interested can place it. * * * nor does it matter that a considerable part of the land is at present used for agriculture; as its value is derived from its prospective town use, and not from its present country use, it might properly be included within the city." Also see State ex inf. Mallett ex rel.

Womack v. City of Joplin, 332 Mo. 1193, 62 S.W.2d 393, where the court ruled to the effect that land, though used for agriculture, may lose its character as such when it attains a value far in excess of its real agricultural value, and thus become subject to annexation.

■ Defendants also argue that the annexation would be unreasonable because some structures which were built after the litigation was commenced are partially within and partially outside of the proposed area. No supporting authority is submitted. We believe this theory is unsound. In the first place, the reasonableness of the annexation proposed is for determination under the conditions shown to exist at the commencement of the suit. Secondly, if the law were as defendants suggest, any annexation proceeding could be defeated by building a structure partly in and partly outside the proposed area boundary line after the petition is filed and before trial.

As for the major portion of the proposed area, the evidence presents the familiar picture of a frequently recurring phenomenon spawned by this automotive age: a quasi-municipal community, principally commercial, partly residential, negligibly agricultural, that has spontaneously originated and developed alongside a major highway at the outskirts of an existing municipality. The community in this case has some attributes of a city, but lacks certain factors requisite to orderly growth and a healthy social structure. It is not able to furnish for itself the essential public services which only a governmental unit can provide, as the city is now doing. And, while it bears physical resemblance to a city, it has none of the municipal powers necessary for systematic development and to protect the various interrelated interests of its community membership.

■ For that matter it seems clear to us that the dvelopments in the proposed area represent an actual growth of Salisbury itself, especially in view of the city's lack and need of industrial sites and suit-able commercial buildings, and the adaptability of most, if not all, of the land in the area to town uses, which is reflected in its greatly increased value. Furthermore, as a matter of public policy, it is not unreasonable that Salisbury should have a voice in guiding the growth of this area "which is growing up in such a miscellaneous fashion on its doorstep," City of St. Joseph v. Hankinson, Mo.Sup., 312 S.W.2d 4. These enumerated factors are universally held to favor annexation. "Sometimes one factor alone is of importance; sometimes several combine their weight to determine the matter." State ex inf. Major v. Kansas City, Banc, 233 Mo. 162, 134 S.W. 1007. In Mauzy v. City of Pagedale, Mo.App., 260 S.W.2d 860, the court said: "In fact, there can be no hard and fast rule laid down for determining the reasonableness of a proposed extension; and a case of reasonableness is made when it appears that the land annexed is so situated as to be adapted to urban purposes, and as to be necessary or convenient to a proper exercise of the city government, even though a portion of the land may be as yet undeveloped or in use for agricultural pursuits." For all these persuasive reasons we have concluded that the city has shown a reasonably immediate need for extension of its boundaries.

From the standpoint of the proposed area, its annexation to the city would give it the benefit of *complete* electric, water and sewer services as they are presently enjoyed by the city proper, the benefit of municipal government as a stabilizing factor of community life, and the benefit of improved services in police protection, fire protection, street lighting and maintenance, sanitation, health and welfare—all to be rendered on the basis of municipal obligation rather than as a courtesy or gratuity extended by the city.

The city has satisfied its burden in this case by proving that there is, at least, a debatable question whether the proposed annexation is reasonable and necessary to its proper development.

One more question remains for decision. Defendants charge the trial court with error in permitting plaintiff to maintain this suit as a class action, for the stated reason that plaintiff failed to prove the defendants were fairly chosen and adequately and fairly represented the whole class. It is not contended that plaintiff's petition is insufficient to support such proof.

 It is provided by the Sawyers Act that "Such action (for a declaratory judgment authorizing annexation) shall be a class action against the inhabitants of such unincorporated area under the provisions of section 507.070, RSMo [1949]." Subsection one of Section 507.070 provides, in part, that: "If persons constituting a class are very numerous or it is impracticable to bring them all before the court, such of them, one or more, as will fairly insure adequate representation of all may, on behalf of all, sue or be sued, * * *." Section 507.070 is supplemented by Civil Rule 52.09, which imposes the following requirement: "Whenever an action is instituted by one or more plaintiffs as representative or representatives of a class or against one or more defendants as representative or representatives of a class, the petition shall allege such facts as shall show that they or the defendants specifically named and served with process have been fairly chosen and adequately and fairly represent the whole class. The plaintiff shall be required to prove such allegations, unless all of the members of the class have entered their appearance, and it shall not be sufficient to prove such facts by the admission or admissions of the defendants who have entered their appearance." The foregoing requirements, both by statute and civil rule, are mandatory and not merely technical or directory. Campbell v. Webb, 363 Mo. 1192, 258 S.W.2d 595; Hribernik v. Reorganized School District R–3, Mo.App., 276 S.W.2d 596 (cited by defendants). Although various considerations have

material bearing upon the question whether representatives of the class in an action under Section 507.070 have been fairly chosen and have afforded the class legally adequate representation, that question is to be determined from the particular facts appearing in each individual case. City of St. Ann v. Buschard, Mo.App., 299 S.W.2d 546;[1] Sheets v. Thomann, Mo.App., 336 S.W.2d 701. The substance of defendants' argument on this point, other than references to Section 71.015, Section 507.070, Civil Rule 52.09, and two Missouri cases, is that "There is no evidence as to how many farmers, how many merchants, how many service stations, are affected, and none as to other occupations. There is no evidence as to how those chosen to be served with process were selected, or as to their occupation or interest. For all the record shows, all of those served with process could represent but one single group and one single interest." This argument is not consistent with the record, as will be demonstrated.

As noted heretofore, this suit was brought against twenty defendants, all of whom were either duly served with summons or entered their appearance. Contrary to defendants' representation, there is evidence in the record amply sufficient to identify fourteen of those original defendants with respect to their business and property interests, as follows: Gene Nagel, filling station operator; Richard Gesling, feed store proprietor; Anna Grigsby, land owner; William Todd, owner of business building; George Edward Williams, owner of land from which lots have been sold for commercial and industrial purposes; Louis Sellmeyer, a landowner; Neil Davis, salvage yard operator; Russell Wright, filling station operator; Thomas Keen, a residence owner; William Leber, restaurant operator and sporting goods dealer; Audra McClain, implement dealer; Carl Freese, garage owner; William Sturm, bowling

1. Citing Crawford, Class Actions under the Missouri Code, 18 Kansas City L.Rev. 103; Class Actions under the Missouri Code, 3 St. Louis U.L.J. 391; 39 Am. Jur., Parties, Sec. 48, p. 922.

alley and restaurant operator and home-owner; George Roling, IGA store owner.

The record discloses that eleven of the twenty original defendants filed answer and otherwise resisted prosecution of this suit. Those active participants were defendants Carl Freese, Richard Gesling, Gene Nagel, Charles F. Tadlock, Audra McClain, George Edward Williams, George T. Roling, Anna Grigsby, William Leber, Neil Davis and William Randolph.

 The persistent and vigorous defense conducted by those eleven answering defendants, as shown by the record itself, is convincing proof that they were fairly chosen and did in fact adequately and fairly represent the whole class. At the outset they employed and have since been represented by able counsel of recognized ability. Prior to answer they attacked plaintiff's petition by a motion to dismiss and a motion to make more definite and certain. Those motions were denied and thereafter they filed a joint answer. Next they filed "Defendants' First Interrogatories" consisting of 52 questions. Dissatisfied with plaintiff's answers thereto, they filed their "Motion to Compel Answers to Interrogatories", pursuant to which, on order of the court, they received more specific answers to their "First Interrogatories." Thereafter they filed a second "Separate" answer, which was followed by their "Motion to Strike Pleadings for Failure to Answer Interrogatories", and in turn by their "Motion to Add, Drop and Substitute Parties," and finally a second "Motion to Dismiss." Three hundred pages of transcript devoted to the trial alone disclose a continued vigorous and ably conducted opposition to plaintiff's efforts in this action, which is further manifested by their prosecution of this appeal. Since it is clearly apparent from the record before us that the proceedings herein were genuinely adversary, and in view of the wide diversification of business and property interests possessed by the named defendants, as shown by the evidence, we conclude that the plaintiff has satisfied its burden to show that its selection of defendants to represent the whole class has satisfied the law's requirements and that the trial court did not err in so ruling. In reaching this result we have duly considered the case, City of Lebanon v. Holman, Mo.App., 402 S.W.2d 832, cited and relied upon by defendants, where the only active defendants to represent widely divergent property interests were a veterinarian, a retired undertaker and an automobile supply dealer who owned grazing land in the proposed area. Those facts are materially different from the facts before us. The cited case is not persuasive on the instant question.

The judgment is affirmed.

HOWARD, P. J., and L. F. COTTEY, Special Judge, concur.