Dear Mayor Windham:
You advise this office that you are the mayor of the Village of Killian, governed by the provisions of the Lawrason Act, R.S.33:321, et seq. The board of aldermen of the Village of Killian has three members. You inquire as to the legality of several actions taken by the board on February 15, 2000, at a special meeting called by one alderman. The meeting was attended by two aldermen and the town clerk; the mayor and a third alderman were not present.
Note first that a special meeting may be called only by the mayor or a majority (two of the three) of the members of the board of aldermen, as R.S. 33:405(C) provides:
 C. Special meetings of the mayor and board of aldermen may be called by the mayor or a majority of the members of the board. The board shall establish by ordinance how notice of special meetings shall be provided to members of the board and the mayor. The notice for a special meeting shall specify the business to be considered at a special meeting. Public notice shall be given as provided in R.S. 42:7. No business, except that specified in the notice of the special meeting, shall be considered at the meeting unless approved by two-thirds of the aldermen present at the meeting. (Emphasis added).
In cases of extraordinary emergency, the mayor or any alderman may call an emergency meeting of the board, as R.S. 33:405(D)(1) provides:
 D.(1) In cases of extraordinary emergency, as defined in R.S. 42:6.1(A)(5), the mayor or any alderman may call an emergency meeting of the board of aldermen. The members of the board and the mayor shall be notified of the meeting in the most practical manner available, and the purpose of the meeting may be stated in general terms. Notice of the meeting shall be given as provided in R.S. 42:7.
Thus, a special meeting, if not an emergency meeting as defined by R.S. 42:6.1(A)(5), may only be called by either the mayor or two board members.
Further, special meetings and emergency meetings must be called only after proper notice is given pursuant to R.S. 42:7 which provides, in pertinent part, as follows:
 A. (1) All public bodies, except the legislature and its committees and subcommittees, shall give written public notice of their regular meetings, if established by law, resolution, or ordinance, at the beginning of each calendar year. Such notice shall include the dates, times, and places of such meetings. All public bodies, except the legislature and its committees and subcommittees, shall give written public notice of any regular, special or rescheduled meeting no later than twenty-four hours before the meeting. Such notice shall include the agenda, date, time, and place of the meeting, provided that upon approval of the agenda, date, time, and place of the meeting, provided that upon approval of two thirds of the members present at a meeting of a public body, the public body may take up a matter not on the agenda. . . .
 (2) Written public notice given by all public bodies, except the legislature and its committees and subcommittees, shall include, but need not be limited to:
 (a) Posting a copy of the notice at the principal office of the public body holding the meeting, of if no such office exists, at the building in which the meeting is to be held; or by publication of the notice in an official journal of the public body no less than twenty-four hours before the meeting.
 2. (b) Mailing a copy of the notice to any member of the news media who requests notice of such meetings; any such member of the news media shall be given notice of all meetings in the same manner as is given to members of the public body.
In accordance with the quoted provisions, the board of aldermen as a public body must give written public notice of a special meeting no later than twenty-four hours before the meeting. The notice must include the agenda, date, time and place. A copy of the written notice must be either posted at the principal office of the board or at the buildings in which the meeting is to be held; or it must be published in the board's official journal at least twenty-four hours before the meeting.
LSA-R.S. 42:9 provides that any action taken in a meeting which is violative of LSA-R.S. 42:7 is voidable. R.S. 42:9 provides:
 Any action in violation of R.S. 42:4.1 through R.S. 42:8
shall be voidable by a court of competent jurisdiction. A suit to void any action must be commenced within sixty days of the action.
As applicable in the instant matter, the public notice requirements of LSA-R.S. 42:7 must have been complied with by the board of aldermen in calling the special meeting. If there was no compliance with the provision, all actions taken in the meeting are subject to being declared void by a court of competent jurisdiction. However, in order to void such actions, a suit must be filed within sixty days of the date that the voidable action was taken.
Assuming that the meeting was properly called, and proper public notice given, note that a quorum is defined by R.S. 33:405(E) as follows:
 E. A majority of the members of the board of aldermen shall constitute a quorum of the board at any meeting.
In the Village of Killian, two of three board members present constitute a quorum.
Additionally, R.S. 33:406 provides:
 § 406. Enactment, recording, and publication of ordinances and resolutions
 A. (1) Any law enacted by a board of aldermen shall be by ordinance. The style of all ordinances shall be: "Be it ordained by the board of aldermen of the City (or Town or Village, as the case may be) of. . . ." No ordinance shall be adopted except by the affirmative vote of a majority of the members of the board.
 (1) Any act of the board which is not law shall be by resolution. A resolution shall be approved by an affirmative vote of a majority of the members of the board present at a meeting. No resolution shall require the signature or other action of the mayor to become effective.
Thus, in response to your questions, a quorum was present at the February 15, 2000 meeting. Since two of the three board members were present, both ordinances and resolutions could legally be adopted, pursuant to R.S. 33:406A(1) and (2), quoted above.
Compensation of your town clerk shall be set by the board of aldermen by ordinance, pursuant to R.S. 33:404.1 providing:
 § 404.1 Compensation of municipal officers
 The board of aldermen shall by ordinance fix the compensation of the mayor, aldermen, clerk, chief of police, and all other municipal officers. The board of aldermen may by ordinance increase or decrease their compensation and the compensation of any non-elected municipal officer and may increase the compensation of other elected officials. However, the board of aldermen shall not reduce the compensation of any elected official during the term for which he is elected.
The ordinance must be presented to the mayor pursuant to R.S.33:406(C)(1), providing:
 B. (1) Every ordinance adopted by the board of aldermen shall be signed by the municipal clerk and presented by the municipal clerk to the mayor within three days after adoption.
The mayor exercises veto power with respect to ordinances, as R.S.33:406(C)(2) and (3) provide:
 (2) The mayor, within ten days of receipt of an ordinance, shall return it to the municipal clerk with or without his approval, or with his disapproval. If the ordinance is approved by the mayor or is returned by the mayor with neither his approval nor disapproval, the ordinance shall become law upon its return to the municipal clerk. If the mayor fails or refuses to return an ordinance to the municipal clerk within ten days of receipt of an ordinance, it shall become law at midnight of the tenth day after the receipt of the ordinance by the mayor. If the mayor disapproves the ordinance, he shall, within ten days after receipt of the ordinance, return the ordinance along with his written statement of the reasons for his veto to the municipal clerk for transmittal to each member of the board of aldermen. The municipal clerk shall record upon each ordinance the date of its delivery to the mayor and the date of receipt from the mayor, if any.
 (3) An ordinance vetoed by the mayor shall be considered again by the board of aldermen at its next regular meeting after the veto. The board may vote on the ordinance at the meeting or at a continuance of that meeting. If a board consists of three members, an affirmative vote by all board members shall be required to override a mayor's veto. If a board consists of more than three members, an affirmative vote of two-thirds of the board's members shall be required to override a mayor's veto. If a board overrides an ordinance vetoed by a mayor, the ordinance becomes law upon its enactment by the board.
This office has recognized the distinction between a resolution and an ordinance, the latter carrying the force and effect of law, while the former expresses the opinion of that administration. See Attorney General Opinion 93-115.
With regard to simple motions and resolutions, the mayor's "veto" power is nonexistent. In Attorney General Opinion 96-326, this office concluded that a resolution passed by the board of aldermen for the city of Ruston directing the mayor to contact a specifically named bond counsel for the issuance of municipal bonds was consistent with the powers of the board and constituted a valid administrative action of the board, for which the mayor's concurrence was not necessary. See Opinion 96-326, attached.
In Attorney General Opinion 92-163, this office concluded that the mayor may not use his veto power to strike down the action of board of aldermen taken by simple motion.
Finally, R.S. 33:404 concerning the duties imposed upon a municipal mayor include the authority "to supervise and direct the administration and operation of all municipal departments, offices, and agencies in conformity with ordinances adopted by the board of aldermen" Thus, the clerk's hours (i.e. whether the clerk is full-time or part-time) in addition to the amount of his compensation must be pursuant to an ordinance properly adopted by the board of aldermen.
We hope the foregoing is helpful to you. Should you have further inquiries, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
 SEPTEMBER 11, 1996 OPINION NUMBER 96-326 Syllabus
 8-A: Bond Issues: Political Subdivisions 71: Municipalities 77: Officers: Local Municipal R.S. 33:361, R.S. 33:362, R.S. 33:386, R.S. 33:406
Resolution passed by Board of Aldermen for the City of Ruston directing the Mayor to contact a specifically named Bond Counsel for Mr. Oscar Barnes, City Attorney the issuance of municipal bonds was City of Ruston consistent with the powers of the 401 North Trenton Street Board and constituted a valid Post Office Box 280 administrative/ministerial action Ruston, Louisiana 71273-0280 of the Board, for which the Mayor's concurrence is not necessary. Dear Mr. Barnes:
You have requested an opinion of the Attorney General, in your capacity as attorney for the City of Ruston ("City"), regarding the authority, vel non, of the Board of Aldermen ("Board") to engage the services of Bond Counsel ("Counsel"). Attached to your request are various documents, including Resolution No. 46 (Resolution) which was passed by unanimous vote of the Board on June 17, 1996. It is this Resolution and the directives contained therein that are at issue.
The Resolution, attached hereto as "Exhibit A", provides in pertinent part:
 "SECTION 1. The Mayor of the City be and she is hereby directed, authorized and empowered to contact Foley 
Judell, L.L.P. (Mr. William H. Beck, Jr.,) Bond Counsel, to initiate the legal proceedings to issue (i) approximately Nine Hundred Fifty Thousand Dollars ($950,000) of Water Revenue Refunding Bonds of the City and (ii) approximately Eighteen Million Dollars ($18,000,000) of electric, water and sewer utilities revenue bonds . . . .
 SECTION 2. Foley Judell, L.L.P., Bond Counsel be and it is hereby employed to do and perform comprehensive legal and coordinate professional work with respect to the issuance of the bonds described in Section 1 hereof, the fee for such services to be established by subsequent resolution of the Mayor and Board of Aldermen in accordance with the fee schedule set forth in the Attorney General's Guidelines for such services; provided, however, that no fees shall be due except in connection with any bond or other evidence of debt actually issued, sold and delivered pursuant to this resolution.
 SECTION 3. The Mayor of the City be and she is hereby further directed to arrange with said Bond Counsel to proceed as expeditiously as possible to implement the issuance of said bonds, all in accordance with the report presented by said Bond Counsel on April 4, 1996, all to the end that the public health, safety, welfare and benefit will be served."
As can be gleaned from the above, the Resolution directs the Mayor to contact Counsel named therein to expeditiously initiate the legal proceedings necessary to issue municipal bonds. The Mayor questions the validity and effect of the Resolution to the extent that it limits her contact to the Counsel named therein as selected by the Board. You ask whether the selection of Counsel pursuant to the attached Resolution is permissible.
The City is governed by the provisions of the Lawrason Act (R.S.33:321, et seq.). We find the following Sections, or portions thereof, to be applicable to your inquiry.
 "§ 361. Municipal powers
 * * *
 B. The power to perform any function necessary, requisite, or proper for the management of its affairs shall specifically include the power to levy and collect taxes and to assume indebtedness as provided by law. In this regard, the board of aldermen of a municipality may levy and collect taxes, incur debt, and issue bonds and other evidences of indebtedness as authorized by law.
 § 362. Exercise of municipal powers; legislative, executive
 A.(1) The legislative powers of a municipality shall be vested in and exercised by the board of aldermen.
 * * *
 B. The mayor shall be chief executive officer of the municipality.
 * * *
 § 386. Appointment of municipal officials; bond required
 A. At the first regular meeting of the board of aldermen succeeding each regular municipal election, the mayor, subject to confirmation by the board of aldermen, shall appoint a clerk, tax collector, and all other necessary officers whose election is not provided for in R.S. 33:381.
 * * *
 C. The mayor, subject to confirmation by the board of aldermen, may appoint and fix compensation for an attorney at law for the municipality, whose duties in such capacity may include representation of all municipal officers as defined by R.S. 33:381(A) in actions against them in connection with and arising out of their functions as such officers, and other duties as prescribed by the mayor. The municipality may also employ counsel to represent its interest should the occasion require.
 * * *
 § 406. Enactment, recording, and publication of ordinances and resolutions
 A. (1) Any law enacted by a board of aldermen shall be by ordinance. The style of all ordinances shall be: "Be it ordained by the board of aldermen of the City (or Town or Village, as the case may be) of . . ." No ordinance shall be adopted except by the affirmative vote of a majority of the members of the board.
 (2) Any act of the board which is not law shall be by resolution. A resolution shall be approved by an affirmative vote of a majority of the members of the board present at a meeting. No resolution shall require the signature or other action of the mayor to become effective."
 [Emphasis added.]
As noted in R.S. 33:361, the power to perform any function
necessary for the management of the City's affairs shall include
the power to collect taxes, incur debt and issue bonds. Section 361 confers this power and/or authority squarely on the shoulders of the Board.
Section 386(C) specifically provides for the appointment of amunicipal attorney by the mayor, subject to confirmation by the Board. It also authorizes the "municipality" to employ counsel to represent it should the occasion arise.
The procurement of legal services with reference to the issuance of bonds falls exclusively under the supervision, control and authority of the Attorney General. The necessity for the hiring of a special attorney (e.g., bond counsel) must be reflected byresolution of the hiring authority, stating the reasons therefor and the compensation to be paid. The resolution is subject to the approval of the Attorney General. R.S. 42:261 through 263.
The hiring of bond counsel via a resolution of the Board must be examined in the context of R.S. 33:406(A)(1) and (2), relating to the enactment of ordinances and resolutions, quoted supra. The distinctions between the two are extensively discussed in the case of Eubanks v. City of Opelousas, 590 So.2d 740 (La.Appeal 3rd Cir. 1991). Quoting from James v. Rapides Parish Police Jury,236 La. 493, 108 So.2d 100 (1959), the Court opined:
 "In a broad sense, an ordinance is a local law or rule prescribed by a public subdivision or a municipality which emanates from its legislative authority as distinguished from administrative action; it is a permanent rule, a law or statute. See Black's Law Dictionary, page 1238; McQuillin, `Municipal Corporation', 3rd Ed. Vol. 5, Sec. 15.01. A resolution, on the other hand, has been defined to be a formal expression of the opinion or will of an official body, adopted by vote; the adoption of a motion, the subject matter of which would not properly constitute a statute. See Black's Law Dictionary, page 1471. McQuillin states, in his treatise on Municipal Corporations, 3rd Ed. Vol. 5, Sec. 15.02:
 `A `resolution' is not an `ordinance' and there is a distinction between the two terms as they are commonly used in charters * * * a resolution deals with matters of a special or temporary character; an ordinance prescribes some permanent rule of conduct or government to continue in force until the ordinance is repealed. It may further be observed that a resolution is ordinarily ministerial in character and relates to the administrative business of the municipality, whereas an ordinance is distinctively a legislative act. Thus, it may be stated broadly that all acts that are done by a municipal corporation in its ministerial capacity and for a temporary purpose may be put in the form of resolutions, and that matters upon which the municipal corporation desires to legislate must be put in the form of ordinances.'"
In Eubanks, plaintiff filed a Writ of Mandamus against the City of Opelousas, seeking reinstatement as the City's Street and Sanitary Commissioner, a position abolished by a resolution of the Board of Aldermen. In finding the resolution to have been properly executed, the Court held:
 "Considering these authorities, we find that the abolition of the position of Street and Sanitary Commissioner of the City and the consolidation of the City street, water, and sewerage department offices into one new department, to be called the Department of Public Works, was ministerial in nature and is an administrative decision that expressed the will of the Board of Aldermen and is not an enactment of law. Therefore, we find that it was proper to do so by resolution rather than by ordinance . . . . This is an enactment of a `special nature' properly enacted by adoption of a resolution. Additionally, since the abolishment of only the position of Street and Sanitary Commissioner was proper by a resolution, we find that the Board of Aldermen did not violate the recordation and publication requirements required by La. R.S. 33:406."
Based on the above analysis, we are of the opinion that the Board's resolution directing the mayor to contact a named Bond Counsel to expeditiously initiate legal services for the issuance of municipal bonds constitutes an administrative/ministerial decision that expressed the will of the Board rather than the enactment of a law. Since it is ministerial in character, dealing with a matter of a special nature, we opine that it is properly effected by resolution.
We are further of the opinion that, under R.S. 33:406(A)(2), the Mayor's concurrence is not necessary for the resolution to become effective. In accord are Attorney General Opinion Nos. 93-117, 92-163, 79-555 and 74-301.
We have reviewed Attorney General Opinion No. 95-226 which addresses the validity of an ordinance passed by the Board. The issue before us is that of a resolution adopted by the Board. As previously discussed, there is a clear distinction between the two terms and the procedures surrounding their implementation. While we concur with the well-written opinion expressed in Attorney General Opinion No. 95-226, we find same to be inapposite to your present inquiry.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ROBERT E. HARROUN, III
Assistant Attorney General
RPI/ROB, III/cla
 APRIL 2, 1992 OPINION NUMBER 92-163
71 — MUNICIPALITIES
LSA-R.S. 33:406
A mayor may not use his veto power Mr. Arthur Neal Bagwell to strike down a motion. The veto Town Attorney power of the mayor extends only to 32418 Bowie Street laws, by-laws and ordinances passed P.O. Box 206 by majority vote of the board of White Castle, Louisiana 70788 aldermen.
Dear Mr. Bagwell:
Your inquiry received March 12, 1992 has been directed to me for research and reply. The Town of White Castle is a Lawrason Act municipality with a Mayor and Board of Aldermen form of government. Your question is generally concerned with the veto powers of the Mayor, if any, when an action of the Board of Aldermen is taken by simple motion.
The Mayor has no statutory authority to veto a simple motion. Our research reflects two previous opinions have addressed this exact issue and concluded:
 ". . . the veto power of the mayor extends only to laws, by-laws and ordinances passed by majority vote of the board of aldermen, and that it does not apply to action taken by the board of aldermen on simple motion." (Emphasis added); See copies of Opinion Number 80-1240, Opinion Number 1942-44, p. 924, and Opinion Number 1938-40, p. 691, enclosed.
Because the problem is procedural in nature, we refer you to Robert's Rules of Order Newly Revised, General Henry M. Robert, (Illinois: Scott, Foresman and Company, 1970), which contains detailed parliamentary rules of procedure. The manual defines a "motion" as "a formal proposal by a member, in a meeting, that the assembly take certain action." Section 3 at page 22. A member makes the motion; another member seconds the motion; the chairman states the question on the motion; the motion is then open for debate; and finally, the assembly adopts or carries the motion, or if the assembly expressly decides against doing what the motion proposes, the motion is lost, or rejected. Section 4 at pages 26 and 27. We also suggest review of pertinent language contained in Section 34 of Robert's Rules of Order relating to the correct procedure to rescind or amend previously adopted motions. See Section 34 at page 256. Applying these rules to your specific questions, if the motion is made and seconded, and approved by affirmative vote of the majority, then the motion carries. If the majority vote is negative, then the motion is rejected. The Mayor may not utilize his veto power in either instance as his "veto is not designed to preclude action taken pursuant to a motion." See Opinion Number 80-1240, at *Page 2. 
Finally, please note the provisions of LSA-R.S. 33:406 which address the veto authority of a Lawrason Act Mayor and the Board of Aldermen's authority to override the Mayor's veto in the enactment of an ordinance. We enclose a copy of Opinion Number 87-596 which discusses the statute in greater detail.
Should you have further questions, please do not hesitate to contact our office.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: KERRY L. KILPATRICK Assistant Attorney General
RPI/KLK/ams 0052E
 Office of the Attorney General State of Louisiana Opinion No. 93-115 July 8, 1993
61 — LAWS — General 88 — POLICE JURIES — In general R.S. 33:1236(1), R.S. 33:1226
A resolution passed by the parish police jury is distinguishable from an ordinance passed by vote of the parish police jury. The latter carries the force and effect of law, while the former expresses the opinion of the police jury or addresses administrative matters. The resolution of the former police jury is not binding upon the newly elected police jury.
Mr. I. Jackson Burson, Jr. Special Assistant District Attorney St. Landry Parish P.O. Box 985 Eunice, LA 70535
Dear Mr. Burson:
On behalf of the St. Landry Parish Police Jury, you make the following inquiry:
What is the effect of a resolution, adopted by a prior police jury, upon the newly elected police jury?
Factually, you relate that by resolution adopted December 4, 1984, the St. Landry Parish Police Jury prohibited an individual from holding the office of President or Vice-President for more than two one-year consecutive terms. A new police jury took office in 1993 after a post re-apportionment election in 1992. These jurors now inquire whether the prior resolution governs the election of the president and vice president of the newly elected police jury.
It is the conclusion of this office that a resolution passed by the former police jury has no effect upon the newly elected police jury. We are guided by reference to Black's Law Dictionary, Fifth Edition, West Publishing Co. (1979) which defines the terms "ordinance" and "resolution" and states:
"Ordinance A rule established by authority; a permanent rule of action; a law or statute. In its most common meaning, the term is used to designate the enactments of the legislative body of a municipal corporation. An ordinance is the equivalent of a municipal statute, passed by the city council, or equivalent body, and governing matters not already covered by federal or state law. Ordinances commonly govern zoning, building, safety, etc. matters of municipality. . . . (Emphasis added).
Resolution A formal expression of the opinion or will of an official body or a public assembly, adopted by vote; as a legislative resolution. Such may be either a simple, joint or concurrent resolution.
The term is usually employed to denote the adoption of a motion, the subject-matter of which would not properly constitute a statute, such as a mere expression of opinion; an alteration of the rules; a vote of thanks or of censure, etc. . . .'Resolution' denotes something less formal than `ordinance'; generally, it is mere expression of opinion or mind of council concerning some matter of administration, within its official cognizance, and provides for disposition of a particular item of administrative business of a municipality; it is not a law, and in substance there is no difference between resolution, order and motion. City of Salisbury, V. Nagel, Mo. App., 420 S.W.2d 37, 43. (Emphasis added)."
A resolution passed by the parish police jury council is distinguishable from an ordinance passed by vote of the police jury. The latter carries the force and effect of law, while the former expresses the opinion of the police jury or addresses administrative matters.
Although a resolution is binding upon the police jury that enacts same, and must be formally rescinded in order to be abrogated, it is our opinion that an old resolution would not be binding upon a newly elected police jury. The law directs the police juries and other parish governing authorities to "make regulations for their own government" and inherent in this directive is the ability to adopt by resolution new procedural rules and policies concerning the administration of government. See LSA-R.S. 33:1236(1).
It is the opinion of this office that the newly elected St. Landry Parish Police Jury must abide by all previously enacted ordinances adopted by the former police jury, as ordinances carry the force and effect of law, but need not follow or act to rescind previous resolutions adopted by the former police jury. The newly elected St. Landry Parish Police Jury may proceed to promulgate new resolutions concerning the administration of government.
Finally, state law does direct the police jury to elect a president, but does not mandate the election of a vice president. LSA-R.S. 33:1226 provides, in part:
"Police jurors elected in the state general election of 1983 and thereafter shall on the second Monday in January next succeeding their election meet at the courthouse of their respective parishes, take the oath of office, organize and proceed to the discharge of their duties, and the police jury shall elect a president from their own number. The police jury may also, in its discretion, elect a vice-president who shall serve as president in the absence or inability of the president to serve for any reason. . . ." (Emphasis added).
The St. Landry Parish Police Jury must elect a new president, but is not required to elect a new vice president. State law presently does not limit the number of terms an individual may serve as president or vice president of a police jury, and for this reason, the newly elected St. Landry Parish Police Jury may proceed to make those selections from among their own number without regard to the resolution of the previous police jury.
Should you have further inquiries in which we may be of assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: KERRY L. KILPATRICK Assistant Attorney General
RPI/KLK/0267E