Rita Marie CLOYD, Plaintiff-Respondent,

v.

Mason D. CLOYD, Defendant-Appellant.

No. 38853.

Missouri Court of Appeals,
St. Louis District,
Division Three.

March 7, 1978.

Motion for Rehearing and/or Transfer to
Supreme Court April 10, 1978.

Application to Transfer Denied
May 9, 1978.

Donald R. Wilson, St. Louis, for defendant-appellant.

Dowd & Oates, Edward L. Dowd and Francis M. Oates, St. Louis, for plaintiff-respondent.

GUNN, Presiding Judge.

Defendant, Colonel Mason D. Cloyd, appeals from a judgment of the circuit court overruling his motions to quash writs of garnishment directed against wages owed to him by the United States Air Force. The garnishments were initiated by his former wife, Rita Marie Cloyd, in order to collect a previous Missouri judgment for alimony and child support. On appeal, defendant argues that the writs of garnishment could not lie because personal jurisdiction was not obtained over him in the underlying divorce proceeding, rendering void the money judgment awarded. Further, he argues that because the trial court sustained his motion to quash one garnishment it was bound by the doctrine of res judicata to sustain his motions to quash succeeding garnishments. Finally, he argues that because of improper service the court did not obtain personal jurisdiction over the garnishee or the res to be garnished. We affirm.

On March 19, 1971, Rita Marie Cloyd, while a resident of Missouri, filed a petition for divorce in the circuit court of the City of St. Louis. Brian Douglas Cloyd, born March 17, 1951, was the only child of the marriage. Col. Cloyd, a physician with the United States Air Force, was then stationed

in Denver, Colorado.[1] The summons and a copy of the petition were served by registered mail addressed to Col. Cloyd at a military facility in Denver. Even though the receipt bore directions that the registered letter was to be delivered to the addressee only, the return receipt dated March 29, 1971 was signed for Col. Cloyd by Vera B. Morris.[2] An answer in the nature of a general denial was subsequently filed by a St. Louis attorney, Frank N. Carter, Jr., purportedly at the behest and with the authority of Col. Cloyd. Mr. Carter also appeared at a hearing on Mrs. Cloyd's motion for alimony, child support and attorney's fees pendente lite. No other reference to Mr. Carter's representation appears in the record until August 18, 1971, when, by leave of court, he withdrew as Col. Cloyd's attorney. On August 31, 1971, Mr. Carter mailed a letter to Col. Cloyd's Denver address advising him that,

"Your divorce case was set for hearing on August 18, 1971, in Division 14 of the Circuit Court of the City of St. Louis, Missouri. As I had not received any response from you regarding the interrogatories that I had previously forwarded nor any other response from you indicating your position on the matter, I requested leave of Court to withdraw as your attorney. This was approved by the Court.

I suggest that you retain counsel to represent you immediately. To fail to do so would put you to a decided disadvantage upon the next court setting."

There is no indication in the record whether Col. Cloyd actually received this letter, but if he did he took no action on it. On September 29, 1971, a decree of divorce was granted to Mrs. Cloyd. Col. Cloyd was ordered to pay $400 per month alimony, $250 per month child support and $400 for attorney's fees. Neither Col. Cloyd nor an attorney on his behalf appeared at the divorce proceeding.

No action was taken to collect the judgment until October 10, 1975, when Mrs. Cloyd filed a request for a thirty day garnishment alleging that the judgment was unsatisfied to the extent of $23,164.00 with interest and costs.[3] The United States Attorney in St. Louis was named garnishee in his capacity as a United States government officer. An execution dated October 14, 1975 was issued along with a sheriff's levy returnable November 13, 1975, and the United States Attorney was summoned as garnishee. The United States, Department of the Air Force filed an answer of garnishee on November 20, 1975, stating that it was indebted to Col. Cloyd in the sum of $2,114.70. This amount was on the court's order paid into the circuit court and subsequently paid out to Mrs. Cloyd without objection.

On January 6, 1976, a request for a ninety day garnishment based on the same unsatisfied judgment was filed again naming the United States Attorney, in his capacity as United States government officer, as garnishee.[4] A sheriff's levy returnable April 4, 1976 was issued and the United States Attorney was served with a summons of garnishment. The Air Force filed an answer of garnishee on February 23, 1976 admitting that as of the return date it would be indebted to Col. Cloyd in the sum of $6,597.86. This second garnishment, unlike the first, was contested by means of a motion to quash alleging, inter alia, several of the grounds asserted in this appeal. A hearing was held in which Col. Cloyd was

1. At all times since the filing of the divorce petition, through these garnishment proceedings, Col. Cloyd has been on active duty in the United States Air Force stationed outside of Missouri.

2. There is no indication in the record as to Ms. Morris' position with the Air Force or her authority to sign for Col. Cloyd. It is admitted by Col. Cloyd in his affidavit that he received the summons and petition.

3. The garnishment requested October 10, 1975, will be designated as garnishment No. 1 throughout this opinion.

4. The garnishment requested January 6, 1976, will be designated as garnishment No. 2 throughout this opinion.

represented by counsel, and the motion to quash garnishment No. 2 was taken under submission. Thereafter, Col. Cloyd, with leave of court filed a supplemental motion to quash accompanied by affidavits from himself and Frank N. Carter, Jr. purporting to deny Carter's authority to file an appearance for Col. Cloyd in the original divorce proceeding.

Meanwhile, a request for a second ninety day garnishment, (the third garnishment) in all material respects identical to the previous requests, was filed by Mrs. Cloyd on May 11, 1976.[5] The sheriff's levy in this instance was returnable on August 23, 1976. Col. Cloyd filed a motion to quash this third garnishment while his motion to quash garnishment No. 2 was still under submission. A hearing on the motion was set for July 19, 1976, but when Mrs. Cloyd failed to appear the court quashed garnishment No. 3 without hearing any evidence.[6]

On September 3, 1976, a third request for a ninety day garnishment (the fourth garnishment) was filed, and the United States Attorney was summoned as a garnishee.[7] A motion to quash this garnishment was filed and was taken under submission.

On October 8, 1976, the circuit court held a hearing to facilitate the disposition of the motions to quash garnishments Nos. 2 and 4 which were still under submission. No further evidence was heard. Mrs. Cloyd through her attorney waived an opportunity to offer additional evidence or to have a further hearing in connection with the pending garnishments. Likewise, Col. Cloyd elected to rest his opposition to the garnishment solely on the grounds stated in his motions to quash as supported by the evidence contained in the accompanying affidavits.

In his affidavit, Col. Cloyd stated that after he received the summons and divorce petition by mail he telephoned Al Roth, a St. Louis attorney with whom he was acquainted, to discuss the matter. Mr Roth advised him that because of his friendship with both of the Cloyds he would represent neither, but that "he would look into the matter further and advise." Col. Cloyd averred that he had no subsequent communication with Mr. Roth; that he had no communication with Mr. Carter; and that he did not authorize Mr. Carter to enter an appearance in the divorce proceeding or have knowledge that he was going to undertake to represent him in any way.

In his affidavit Mr. Carter stated that Mr. Roth had contacted him in May, 1971, requesting that he file an answer on behalf of Col. Cloyd in the pending divorce and that he appear in his behalf at the PDL hearing. Mr. Carter complied with these requests. Thereafter he attempted to communicate in writing with Col. Cloyd concerning unanswered interrogatories. Receiving no response to these letters, Mr. Carter withdrew from the case and notified Col. Cloyd of his withdrawal by mail. Mr. Carter stated that he did not know Col. Cloyd and had never discussed the divorce suit with him. He averred that Col. Cloyd gave him no authorization to act in his behalf and that he acted solely at the behest of Mr. Roth. There was no affidavit or other testimony from Mr. Roth, and his absence was not explained.

On November 29, 1976, the circuit court overruled the motions to quash garnishments Nos. 2 and 4. It is from this order that Col. Cloyd appeals.[8]

5. The garnishment requested May 11, 1976, will be designated as garnishment No. 3 throughout this appeal.

6. On July 22, 1976, Mrs. Cloyd filed a motion to rehear the motion to quash garnishment No. 3 alleging a lack of actual notice of the hearing. This motion, however, was not acted upon and must now be deemed denied. See Rule 78.06 V.A.M.R.

7. The garnishment requested September 3, 1976, will be designated as garnishment No. 4 throughout this opinion.

8. After the court's order denying defendant's motions to quash plaintiff served interrogatories on the United States as garnishee. The Air Force filed an answer to the fourth garnishment and later filed answers to the interrogatories.

Col. Cloyd's first assault on the garnishment relates to the validity of the underlying divorce decree awarding alimony and child support. He argues that the court which granted the divorce was not empowered to enter a money judgment against him because personal jurisdiction was not obtained. Col. Cloyd was not personally served, and he states in his affidavit that the purported appearance entered by Mr. Carter in his behalf was without authority. He therefore argues the writs of garnishment should be quashed.

A valid judgment is an indispensible prerequisite to a valid garnishment. Before a court may rightfully award a money judgment against a party, there must have been either personal service or a general appearance by the party himself or through counsel. *First National Bank in Chester v. Conner*, 485 S.W.2d 667 (Mo.App. 1972). Where there is no personal service and where the attorney who enters an appearance on behalf of a party without his consent, the answer filed does not confer personal jurisdiction over the party, and any money judgment entered is void. Id. The proper remedy in the face of a writ of garnishment based on judgment void for lack of personal jurisdiction is a motion to quash. *Drinkard v. Eastern Airlines, Inc.*, 290 S.W.2d 175 (Mo.App.1956); *Lohmann v. Lohmann*, 246 S.W.2d 368 (Mo.App.1952); *Weniger v. Weniger*, 32 S.W.2d 773 (Mo. App.1930). A motion to quash a garnishment for alleged invalidity of the judgment, however, is a collateral attack on the judgment and will lie only where the record affirmatively discloses that the judgment is void. *First National Bank in Chester v. Conner*, supra. But such a finding will not be lightly made. A licensed attorney who enters an appearance for a party is presumed to do so with authority. *Johnson v. Baumhoff*, 322 Mo. 1017, 18 S.W.2d 13 (1929). And there is even a stronger presumption that a judgment rendered by a court of competent jurisdiction is valid and obtained by proper means. *O'Neill v. Winchester*, 505 S.W.2d 135 (Mo.App.1974); *Colorado Milling & Elevator Co. v. Rolla Wholesale Grocery Co.*, 102 S.W.2d 681 (Mo.

App.1934). The existence of every fact essential for the court to have rendered a valid decree is presumed, *Gomez v. Gomez*, 336 S.W.2d 656 (Mo. banc 1960), with the burden on the party contesting the judgment to overcome such presumptions. *O'Neill v. Winchester*, supra; *Colorado Milling & Elevator Co. v. Rolla Wholesale Grocery Co.*, supra.

Col. Cloyd argues that he has met his burden by filing the affidavits from himself and Mr. Carter with his motion to quash the garnishments. Relying on *Conner*, he argues that these uncontroverted affidavits establish as a matter of law that the attorney who appeared did so without authority. The *Conner* case, however, does not mandate a decision in favor of Col. Cloyd in this case. In *Conner*, the attorney who filed an answer on behalf of the party contesting the judgment testified in open court that he did so without authority. This testimony convinced the trial court that the answer had indeed been filed without the party's consent and induced the quashing of the writ of garnishment based on the improper judgment.

In this case the trial court, after a consideration of the entire record, found that Col. Cloyd failed to meet his burden of showing lack of authority and refused to quash the garnishments. We are thus faced with the question of whether there was sufficient evidence for the court to so find. We believe there was. First, there were the presumptions that an attorney who files a pleading for a party does so with authority and that a court of competent jurisdiction will render a valid judgment. Second, Col. Cloyd allowed garnishment No. 1 to proceed unchallenged even though it deprived him of over $2,000 in wages. Third, neither Col. Cloyd nor Mr. Carter testified in person, which would subject their statements to the scrutiny of cross-examination. Finally, and most significant, Mr. Roth, who acted as an intermediary between Col. Cloyd and Mr. Carter, filed nothing regarding the content of his conversations with those persons. There was no explanation for his failure to

provide testimony. Based on these considerations and the implications fairly derivable therefrom, the trial court could reasonably find that Mr. Carter entered his appearance on behalf of Col. Cloyd with the authority to do so.

■ Col. Cloyd urges that under Rule 55.28 V.A.M.R.[9] the trial court was compelled to accept as true facts stated in the uncontroverted affidavits. He argues that at the very least the affidavits made a prima facie case of absence of authority thus shifting the burden of going forward to Mrs. Cloyd. We disagree. It is true that in interpreting Fed.Rules Civ.Proc. Rule 43(e) U.S.C. 28, which is identical to our Rule 55.28 V.A.M.R., the federal courts have consistently held that where facts contained in affidavits are not controverted they are deemed admitted for purposes of the motion. See *Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182 (7th Cir. 1969); *International Graphics, Inc. v. MTA-Travel Ways, Inc.*, 71 F.R.D. 598 (S.D.Fla. 1976); *McDavid v. James*, 64 F.R.D 182 (E.D.Tenn.1973); *Bucholz v. Hutton*, 153 F.Supp. 62 (D.Mont.1957). But we need not decide here if a similar interpretation should be given to our Rule 55.28. In light of the forementioned evidence and presumptions supporting the trial court's decision to overrule the motions to quash, we believe that Col. Cloyd's affidavits were controverted by facts on the record thereby relieving Mrs. Cloyd of any necessity of filing counter affidavits.

■ Our courts have held that facts contained in affidavits accompanying motions are competent evidence and, if believed by the trial court, will support a judgment. *Litzinger v. Pulitzer Publishing Co.*, 356 S.W.2d 81 (Mo.1962); *Germanese v. Champlin*, 540 S.W.2d 109 (Mo.App.1976). Nevertheless, our courts have long held that the trial court when acting as the trier of fact may disbelieve the testimony of any witness. *Labor Discount Center, Inc. v.*

*State Bank and Trust Co.*, 526 S.W.2d 407 (Mo.App.1975). "The trial court in a court-tried case is the arbiter of the facts; it may believe or disbelieve oral evidence and the fact that the testimony is uncontradicted is not in any way decisive." *Intertherm, Inc. v. Coronet Imperial Corp.*, 558 S.W.2d 344, 348 (Mo.App.1977). If, then, under Missouri law, the trial court may disbelieve in-court testimony, a fortiori an affidavit may be similarly treated.

■ Next, Col. Cloyd asserts that the trial court erred in overruling his motions to quash, in that the requirements of the Soldiers' and Sailors' Relief Act were not complied with, thereby rendering the divorce judgment void. 50 U.S.C. Appx. § 520, which is applicable in suits against military personnel provides in part:

"(1) In any action or proceeding commenced in any court, if there shall be a default of any appearance by the defendant, the plaintiff, before entering judgment shall file in the court an affidavit setting forth facts showing that the defendant is not in military service. . .

If an affidavit is not filed . . . no judgment shall be entered . . . until after the court shall have appointed an attorney to represent defendant and protect his interest . . .."

Col. Cloyd argues that a default judgment was entered against him without an attorney having been appointed to represent and protect his interests. His argument is incorrect. The judgment entered was not a default. Col. Cloyd through his attorney entered an appearance by filing a general denial. Prior to trial, however, the attorney withdrew from the case and no one appeared on his behalf when the judgment was entered. Under these facts there was no default nihil dicit, but a mere default in appearance. The judgment was on the merits after a consideration of the evidence proffered by the pleadings. *Hamm*

9. Rule 55.28 V.A.M.R. Evidence on Motions. "When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter may be heard wholly or partly on oral testimony or depositions."

*v. Hamm,* 437 S.W.2d 449 (Mo.App.1969); *Kollmeyer v. Willis,* 408 S.W.2d 370 (Mo. App.1966); *J. G. Jackson Associates, Inc. v. Mosley,* 308 S.W.2d 774 (Mo.App.1958).

Moreover, there was no "default of any appearance by the defendant" as that term has been interpreted in numerous decisions. For there to be such a default the defendant must not have made a general appearance at any time while the suit was pending. *Blankenship v. Blankenship,* 263 Ala. 297, 82 So.2d 335 (1955); *Koser v. Koser,* 148 Neb. 277, 27 N.W.2d 162 (1947); *In re Cool's Estate,* 19 N.J.Misc. 236, 18 A.2d 714 (Orphans Ct. 1941). If an appearance is made which is deemed extant at the time plaintiff seeks to enter judgment the defendant is precluded from relying on the protections afforded by § 520. *Case v. Case,* 124 N.E.2d 856 (Pro.Ct. Ohio 1955).

In this case, Col. Cloyd entered an appearance through his attorney by filing an answer. This appearance was deemed to have existed when the judgment was entered. The fact that his attorney withdrew prior to trial is of no consequence. The purpose of § 520 is to protect persons in the armed services from judgments entered against them without their knowledge. *Title Guarantee & Trust Co. v. Duffy,* 267 App.Div. 444, 46 N.Y.S.2d 441 (S.Ct. 1944). Here, Col. Cloyd acknowledged receiving process by substituted service and taking steps to procure the services of an attorney. Assertion of § 520 as a defense to these garnishments is an improper attempt to use the statute as a sword and not the shield it was intended to be. *Orrick v. Orrick,* 269 S.W.2d 153 (Mo.App.1954).

Col. Cloyd next argues that when the court sustained his motion to quash garnishment No. 3 it was bound by principles of res judicata to sustain his motions to quash garnishments Nos. 2 and 4, because the issues and parties were identical.

Col. Cloyd's motion to quash garnishment No. 3 was filed on Thursday, July 15, 1976, while his motion to quash garnishment No. 2 was still under submission. The two motions stated identical grounds for quashing the garnishments. In a letter dated the same date, the court notified Mrs. Cloyd's attorney that a hearing would be held on Col. Cloyd's motion at 2:00 P.M., Monday, July 19, 1976. Mrs. Cloyd filed no reply, and when she and her attorney failed to appear at the hearing, the court entered the following order:

"Defendant's Motion to Quash called. Plaintiff or her counsel fail to appear. The Court being duly advised, Defendant's Motion to Quash is GRANTED, and the Garnishment dated May 27, 1976, and directed to 'United States Attorney, U.S. Government Officer' is quashed, and the Execution dated May 25, 1976 is also quashed."

Subsequently, a fourth writ of garnishment was issued and Col. Cloyd moved that it be quashed on the same grounds as those alleged in the previous two motions. The motion was taken under submission until November 29, 1976, when the court overruled both pending motions to quash garnishments.[10]

The function of the doctrine of res judicata is to put an end to litigation arising out of the same subject matter between the same parties (and those in privity). *Cantrell v. Caruthersville,* 359 Mo. 282, 221 S.W.2d 471 (1954). Once an issue is fully heard and resolved by a court of competent jurisdiction, the court's judgment is conclusive as to the law and facts decided. The successful party is then protected from the vexation of further litigation. *Blue Ridge Shopping Center v. Schleininger,* 432 S.W.2d 610 (Mo.App.1968). Before a former judgment may serve as a bar to subsequent litigation, however, that decision must, inter alia, be one on the merits of the controversy. *Heagerty v. Hawkins,* 173 S.W.2d 923 (Mo.1943); *Se-Ma-No. Electric Co-op. v. Mansfield,* 321 S.W.2d 723 (Mo. App.1958); *Richter v. Frieden,* 243 S.W.2d 783 (Mo.App.1951).

---

10. In contrast to the memorandum order quashing garnishment No. 3 the court's order overruling Col. Cloyd's motion to quash Nos. 2 and 4 included a well reasoned and comprehensive discussion of the facts and law concerning each of the points raised in the motions.

A judgment on the merits has been defined as " 'one rendered after argument and investigation and when it is determined which party is in the right, as distinguished from a judgment rendered upon some preliminary or merely technical point, or by default and without trial.' " *Sheen v. DiBella,* 395 S.W.2d 296, 304 (Mo.App.1965). See also *Healy v. Atchison, Topeka & Santa Fe R. R. Co.,* 287 S.W.2d 813 (Mo.1956); *State ex rel. National Lead Co. v. Smith,* 134 S.W.2d 1061 (Mo.App.1939). Where the merits of the controversy have not actually been decided, a later suit on the same cause is not precluded. *Bays v. Jursch,* 340 S.W.2d 430 (Mo.App.1960).

 We find no indication that the memorandum order entered by the court quashing garnishment No. 3 was on the merits.[11] Rather, it appears to be a decision rendered as a result of Mrs. Cloyd's default in appearance. No evidence was heard, no trial was had and no reply was filed to Col. Cloyd's motion to quash. Under these circumstances the order quashing garnishment No. 3 is not res judicata. See *Kansas City Power & Light Co. v. Riss,* 319 S.W.2d 262 (Mo.App.1958); *State ex rel. Green v. Brown,* 224 Mo.App. 1197, 31 S.W.2d 215 (1930). As was stated in *Davis v. Davis,* 252 S.W.2d 521, 524 (Mo.1952): "The policy of consistency in rulings at different stages in a pending case is a good policy, but so extending the policy that error may not be corrected would not be a sound rule of law. . . . The law does not require trial judges to refrain from correcting reversible error."

 Col. Cloyd next contends that the writs of garnishment should have been quashed because the original divorce decree is patently erroneous on its face. He alleges that the memorandum of judgment filed by Mrs. Cloyd misrepresented her child's age by twenty years and that this misrepresentation influenced the court's decision in awarding child support. We fail to see any relationship between the alleged misrepresentation and the purported error of the court in refusing to quash the garnishments. Mrs. Cloyd's petition for divorce properly stated the child's birthdate as March 17, 1951, as did her affidavit of statistics filed therewith. We cannot say that because a later unsigned memorandum for the clerk contained a clerical error that the judgment was erroneous on its face. Mrs. Cloyd does not seek to collect child support, to which she is not entitled, for an emancipated child. See *Schulte v. Schulte,* 140 S.W.2d 51 (Mo.1940); *Sunderwirth v. Williams,* 553 S.W.2d 889 (Mo.App.1977); *Green v. Green,* 234 S.W.2d 350 (Mo.App. 1950). The amount of unsatisfied judgment listed in her request for garnishment is less than the accrued alimony alone. Col. Cloyd has suffered no prejudice as a result of the clerical error.

Col. Cloyd argues next that Mrs. Cloyd abandoned the garnishment, because she failed to propound interrogatories to the garnishee in accordance with Rule 90.12 V.A.M.R.[12] That rule provides:

"The plaintiff *may* exhibit in the cause written interrogatories touching the property, effects and credits attached in the hands of any garnishee, and require such garnishee to make full, direct, and true answers to the same, upon oath, which interrogatories shall be filed at the return date of the writ, or within six days thereof." (emphasis added)

Col. Cloyd argues that serving interrogatories on the garnishee is a mandatory prerequisite to a successful garnishment pro-

---

11. The United States Attorney's office reached the same conclusion and notified Col. Cloyd's attorney, subsequent to the order of July 19 quashing garnishment No. 2, that it would advise the Air Force to honor the summons of garnishment.

12. See note 8, *infra.* Mrs. Cloyd did propound interrogatories in conjunction with garnishment No. 4. They were not, however, filed until more than thirty days after the return date and thus were not timely under Rule 90.12 V.A.M.R. Interrogatories relating to garnishments No. 1 through 3 were not filed.

ceeding. In support of this argument, we have been referred to *Beaufort Transfer v. Fischer Trucking Co.,* 357 F.Supp. 662 (E.D. Mo.1973), and *Dunham v. Jerome,* 226 Mo. App. 1214, 49 S.W.2d 637 (1932), where it was stated that failure to file timely interrogatories has the effect of abandoning the garnishment. But in those cases there was a controversy whether the garnishees were in fact debtors of the defendant. Further, no answers were filed by the garnishees.

The language of Rule 90.12 V.A. M.R. is directory as to necessity for filing interrogatories, rather than mandatory. The effect of neglecting to file them under Rules 90.12 and 90.13 V.A.M.R. is that the plaintiff, once the time for filing lapses, may not force the garnishee to file an answer. However, where, as here, the plaintiff has knowledge of the information typically sought in the interrogatories and where the garnishee in response to the summons voluntarily files an answer admitting its indebtedness to the judgment debtor, failure to file interrogatories is not commensurate with abandonment of the garnishment. It would be superfluous to require their submission in such a case. See *Hilke v. Bank of Washington,* 251 S.W.2d 963 (Mo.App.1952).

Finally, Col. Cloyd argues that the court had no jurisdiction over either the person of the garnishee or over the proceeds, because the garnishments were directed at and served on the United States Attorney. Col. Cloyd contends that to bestow the necessary jurisdiction on the court, the United States Air Force, as his employer, should have been served directly. We

find the means of service employed to be sufficient.

Prior to January 1, 1975, the doctrine of sovereign immunity protected members of the military service from having their wages due from the United States government garnished to satisfy a state court judgment. With the enactment of 42 U.S.C. § 659,[13] Congress waived the federal government's immunity for the limited purpose of satisfying judgments against military personnel for alimony and child support. *Popple v. United States,* 416 F.Supp. 1227 (W.D.N.Y.1976); *Morrison v. Morrison,* 408 F.Supp. 315 (W.D.Tex.1976). By Executive Order 11881 (Oct. 3, 1975), the Civil Service Commission was directed to issue regulations which would facilitate appropriate service of process on executive agencies. While this case was pending in the circuit court, no such regulations had been issued. Further, our Supreme Court rules governing garnishment and service of process do not provide for service of the United States government. See Rules 43 and 90 et seq., V.A.M.R. Thus, when process relating to these garnishments was served the parties were without guidance as to the proper method of service.[14]

We believe that under the circumstances, service of the United States Attorney for the district in which the garnishment proceeding was commenced was sufficient to confer jurisdiction over the person and the res of the garnishee. See *Popple v. United States,* supra, in which the same means of service of process was used. Even though technically Col. Cloyd is employed by the Air Force, his salary is paid from the United States Treasury. A garnishment of any agency of the Executive Department is ulti-

13. "Notwithstanding any provision of law, effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States . . . to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States . . . were a private person, to legal process brought for the enforce-

ment, against such individual of his legal obligations to provide child support or make alimony payments."

14. Except as we note that Fed.R.Civ.P. 4(d)(4) —the procedural rule apparently followed in part in this case—provides for service of summons upon the United States by delivering a copy to the United States Attorney or assistant

mately a garnishment of the federal treasury.[15]

The judgment is affirmed.

SIMEONE, C. J., and KELLY, J., concur.

United States Attorney for the district in which the action was brought. This rule could serve as a guide only as it pertains solely to service of process in federal causes.

15. For a further explanation of the procedure and purposes of 42 U.S.C. § 659, see Coleman, Missouri Experience With Garnishments Under 42 U.S.C. 659, 30 J.Mo.Bar. 40 (1977).