PEOPLES–HOME LIFE INS. CO., Plaintiff,

v.

William G. HAAKE, Respondent,

and

Suzanna Sermon and Jennifer Sermon, Appellants.

William G. HAAKE, Respondent,

v.

METROPOLITAN LIFE INSURANCE CO. et al., Defendants,

and

Suzanna Sermon and Jennifer Sermon, Appellants.

Nos. WD 30711, WD 30833.

Missouri Court of Appeals, Western District.

June 9, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 8, 1980.

Application to Transfer Denied Sept. 9, 1980.

Thomas A. Sweeny, Kansas City, for appellants Suzanna & Jennifer Sermon.

Bart L. Strother of Morris & Foust, Kansas City, for respondent William G. Haake.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

The instant proceeding arises from separate appeals from two judgments entered by different divisions of the 16th Judicial Circuit. The first appeal was from an order of dismissal pursuant to Rule 61.01(b). The second appeal was from a summary judgment. The cases were consolidated on appeal. Both judgments are reversed, consolidated for purposes of trial and remanded to Division No. 11 of the 16th Judicial Circuit.

For clarification, the cases are separately discussed herein and are referred to as the Peoples Case and the Metropolitan Case, respectively. A singular account of the factual background suffices to address both cases.

On January 29, 1977, the body of Evelyn Haake, bearing gunshot wounds, was discovered. She was the apparent victim of a homicide. Mrs. Haake was the former wife of Raymond W. Sermon and at the time of her death, was the wife of William G. Haake. Mrs. Haake had two children born of the marriage to Raymond W. Sermon. She was survived by the former' husband, her second husband and her minor children.

Investigation of the homicide was commenced by the Raytown Police Department. It is presumed by this court that this investigation remains pending, because the rec-

ord fails to disclose any disposition of the criminal matter. Reference to the criminal proceedings, as will be observed, is necessary as those proceedings become the focal point of these two cases.

*THE PEOPLES CASE*

William G. Haake, surviving spouse of Evelyn Haake, made claim to the proceeds of a life insurance policy issued upon Evelyn Haake. The face amount of the policy was $50,000. William Haake was named as primary beneficiary and Henry Haake, Sr. was named secondary beneficiary on this policy. The Peoples-Home Life Insurance Company filed an interpleader action naming in its petition William G. Haake, Henry Haake, Sr., and Raymond W. Sermon as defendants. Raymond W. Sermon was designated party defendant in his capacity as the natural father and guardian of the two minor Sermon children. Henry Haake, Sr. defaulted by failure to file an answer.

Separate answers were filed by the remaining defendants. Defendant William G. Haake filed his answer claiming entitlement to the policy proceeds and denying any actions which would bar his recovery as named beneficiary. Defendant Sermon filed his answer alleging Evelyn Haake had been murdered, that William Haake was a suspect in the ongoing criminal investigation and that if the named beneficiaries brought about the death of the insured, then the two surviving minor children were entitled to the policy proceeds.

Following the initial pleadings, discovery by way of interrogatories ensued. It is necessary at this juncture to set forth the chronology of the discovery and the pertinent responses found therein.

(a) June 1, 1978—Defendant Haake mailed opening interrogatories to defendant Sermon.

(b) July 15, 1978—Defendant Haake moves for judgment by default pursuant to Rule 61.01(b) upon failure of Sermon to answer interrogatories.

(c) July 17, 1978—Defendant Sermon as guardian ad litem files answers to Haake's interrogatories and alleges inability to obtain information about the murder investigation from the Raytown Police Department.

(d) July 20, 1978—Defendant Haake files another motion pursuant to Rule 61.-01(b) alleging the answers to interrogatories are incomplete, evasive and improperly sworn to and signed.

(e) August 28, 1978—Trial court orders Sermon to make factual and definite answers to interrogatories nos. 2, 6, 8 and 9 by September 20, 1978.

(f) September 20, 1978—Defendant Sermon files amended answers to interrogatories.

(g) October 3, 1978—Defendant Haake moves again for dismissal and judgment pursuant to Rule 61.01(b) for failure of defendant Sermon to comply with the court order of August 28, 1978.

(h) October 25, 1978—Defendant Sermon files answers to interrogatories and moves the court to accept them as full and complete.

(i) November 14, 1978—Court sustains defendant Haake's motion for judgment pursuant to Rule 61.01(b).

(j) January 12, 1979—Court overrules defendant Sermon's motion for oral argument and orders policy proceeds paid to defendant Haake. This judgment was deemed final and appealable. (Record shows that notice of appeal was filed with the Missouri Supreme Court on January 2, 1979)

(k) January 23, 1979—Cause transferred from Missouri Supreme Court to Missouri Court of Appeals, Western District.

(l) January 25, 1979—Cause received in Missouri Court of Appeals, Western District.

*METROPOLITAN CASE*

William Haake as the named beneficiary filed suit upon a second life insurance policy insuring the life of Evelyn Haake, issued by the Metropolitan Life Insurance Company. The sum claimed was $48,242. The Metro-

politan Life Insurance Company filed a counterclaim in the nature of interpleader for purposes of determining whether the policy proceeds were payable to William Haake or the minor Sermon children.

On February 20, 1979, plaintiff William Haake filed a motion for summary judgment alleging the default judgment in the *Peoples Case* was a bar in the *Metropolitan Case* under the doctrine of res judicata. The trial court sustained plaintiff Haake's motion and entered judgment on March 14, 1979. Notice of appeal from that judgment was filed March 26, 1979.

Pending the appeal of both cases, Sermon and his counsel were advised of their failure to comply with Rule 84.04. This court, on repeated occasions, so advised counsel and Sermon and in each instance, granted time in which to comply with the rule. This failure led to a hearing by a special panel of this court which culminated in the removal of Raymond Sermon as guardian for the minor children, and appointment of a successor guardian. The successor guardian is also the legal counsel pursuing the appeal following the filing of an appropriate brief.

Two points of alleged error are presented and they address separately the two judgments entered heretofore. Consideration of the alleged errors is taken up in the order of their presentment and as they apply to each of the specific trial court judgments. *PEOPLES CASE*—The trial court erred in sustaining respondent's motion to dismiss because the answers to respondent's interrogatories by the minor children were complete and sufficient in view of the gravamen of the case and further that the action of the trial court was capricious and arbitrary in view of the severity of the sanction imposed.

*METROPOLITAN CASE*—The trial court erred in granting summary judgment upon the doctrine of res judicata since the ruling in the previous case was not upon the merits and such action was manifestly unfair to the minor children as parties herein.

The issue surrounding appellants' first point of error is whether or not the trial court's action in entering judgment pursu-

ant to Rule 61.01(b) is a matter reviewable by this court and if so, upon what premise.

Rule 61.01(b) states:

"(b) *Failure to Answer Interrogatories.* If a party fails to answer interrogatories or file objections thereto within the time provided by law, or if objections are filed thereto which are thereafter overruled and the interrogatories are not timely answered, the court may, upon motion and reasonable notice to other parties, make such orders in regard to the failure as are just and among others the following:

(1) An order striking pleadings or parts thereof, or dismissing the action or proceeding or any part thereof, or render a judgment by default against disobedient party.

(2) Upon the showing of reasonable excuse, the court may grant the party failing to answer the interrogatories additional time to file answers but such order shall provide that if the party fails to answer the interrogatories within the additional time allowed, the pleadings of such party shall be stricken or the action be dismissed or that a default judgment shall be rendered against the disobedient party."

There is without question the authority allowing the trial court to impose sanctions against a party for the untruthful or evasive answering of interrogatories, see *Hilmar v. Hezel*, 492 S.W.2d 395, 397 (Mo. App.1973); that absent an abuse of discretion the trial court has such broad power, see *State ex rel. N. W. Electric Power Cooperative, Inc. v. Buckstead*, 399 S.W.2d 622 (Mo.App.1966); *Schmelig Construction Co., Inc. v. Missouri State Highway Commission*, 543 S.W.2d 265 (Mo.App.1976). This broad power under proper circumstances extends to the entry of a default judgment, see *State ex rel. Jones v. Reagan*, 382 S.W.2d 426 (Mo.App.1964), *J & J Window Sales, Inc. v. Mueller*, 567 S.W.2d 153 (Mo.App. 1978).

Although the trial court is empowered with such broad discretion, such discretion

is not removed from appellate review. This latter provision becomes particularly applicable where in those cases judgment by default is entered against a party for failure to adhere to an order for discovery, see *In re Marriage of Dickey*, 553 S.W.2d 538 (Mo.App.1977). Judgments by default have long been recognized as harsh and drastic actions and there is wide observance that "[J]udgments by default are not favored", see *Lambert Brothers, Inc. v. Tri City Construction Co.*, 514 S.W.2d 838, 841 (Mo.App. 1974) and 47 Am.Jur.2d Judgments § 1154, p. 185 (1969). Where such a judgment is rendered, one court has observed the function of review as follows:

> "[T]he principle . . . that each case must rest and be ruled upon its own particular facts is especially applicable in an inquiry as to whether a trial court has been guilty of an abuse of discretion in setting aside, or refusing to set aside a default judgment," *Kollmeyer v. Willis*, 408 S.W.2d 370, 380 (Mo.App.1966).

The authorities upholding discovery sanctions either directly or inferentially reflect the actual nature of penalized parties as having, by or through their own conduct or upon their own volition, produced the action by the courts. This common element is reflected in *Hilmer v. Hezel, supra; J & J Window Sales, Inc. v. Mueller, supra; In re Marriage of Dickey, supra*, and *Thomas v. Fitch*, 435 S.W.2d 703 (Mo.App.1968).

*In re Marriage of Dickey, supra*, reflects the element of willfulness prior to imposition of sanction. That other jurisdictions recognize this element, see *Herold v. Computer Components International, Inc.*, 252 So.2d 576 (Fla.App.1971); *Richards v. O'Boyle*, 21 Mich.App. 607, 175 N.W.2d 874 (1970); *Allegro v. Afton Village Corp.*, 9 N.J. 156, 87 A.2d 430 (1952). For further discussion on the point, see 56 A.L.R.3d 1109, 1129–31. It is not to say that these authorities declare that willful failure or refusal is a condition precedent to imposition of sanction and default, but the factual patterns to be found within these authorities strongly lean in this direction.

■ Another important element which must be considered in review of the propriety of a trial court's discovery enforcement is the ability of the defaulted party to protect his or her own interests, see *In re M___ & M___*, 446 S.W.2d 508, 513–514 (Mo.App. 1969), which, while dealing with the necessity of an evidentiary hearing, also dealt with the propriety of a default judgment when it declared:

> "Rule 61.01(b) is not by its terms mandatory, but discretionary, for it provides that as a consequence of a party's refusal to obey a discovery order 'the court *may*' make such orders as are just, including the striking of his pleadings or the rendering of a judgment against him by default. Whether the court makes or refuses to make such an order under the rules is within the discretion of the trial court in the first instance. *Nevertheless, that discretion must be applied with wisdom and justice, and the propriety of the discretion so exercised is open to review upon appeal . . . the administration of justice, particularly where the interests of minor children are involved, would still require that so far as reasonably may be done in accordance with orderly procedure, cases should be decided on their merits after a full hearing.*" (emphasis added)

At this juncture, it is necessary to review the particular discovery question involved in the instant case. As the above chronology points out, on June 1, 1978, defendant Haake mailed opening interrogatories to defendant Sermon. It must be reiterated that the interest of Sermon was that as guardian for the two minor Sermon children. There was a failure by Sermon to answer the interrogatories and Haake moved for default judgment upon this failure under Rule 61.01(b).

The particular interrogatories must, at this point, be set forth in order that they can be placed in perspective as to how the trial court ruled and why disposition upon the issue is made by this court. The interrogatories and the answers were as follows:

"(No. 2) Q. State the name and address of each individual who witnessed or claims to have witnessed the death of Evelyn Haake.

A. Pending further investigation.

(No. 6) Q. State the facts upon which you base your contention that you were entitled to the proceeds of the life insurance policy identified in the petition filed in this case.

A. Evelyn had become more valuable in purely monetary terms dead than alive.

(No. 8) Q. Did William G. Haake cause Evelyn Haake to be killed? If your answer is yes, state the facts upon which you base this contention.

A. Yes, but since there is an ongoing murder investigation being conducted by the Raytown Police Department, disclosure of this information is not allowed at this time.

(No. 9) Q. State the name and address of each individual who has knowledge of your contentions that Evelyn Haake was murdered and that William G. Haake caused her to be killed.

A. Michael Dunn, whom after pleading guilty to a mail fraud scheme involving Haake, is to the best of our knowledge currently serving time in a federal prison. In addition thereto a dozen or so friends and acquaintances know about the circumstances behind the murder."

It must be remembered that the interest of Raymond W. Sermon is that of the two minor children. As has been pointed out, the original counsel and the guardian, upon a special hearing by a panel of this court, were removed from the case and a successor guardian, who is an attorney, was designated to prosecute this appeal.

The record in this case renders complete discernment of the legitimacy of appellants' claim that more complete answers to the interrogatories could not have been given. On the other hand, the record of this case fails to show that the trial court ruled upon the merits of the case. Rather, what is reflected is one directive by the trial court to Raymond Sermon to make more definite answer and, upon the insistence of Haake,

the trial court sustained the motion for default judgment.

If appellants' defense is a good one, it is certainly reviewable by this court, see *In re Marriage of Dickey, supra; In re M____ & M____, supra; Butler v. Circulus, Inc.,* 557 S.W.2d 469 (Mo.App.1977); *State ex rel. Mid-American Pipeline Co. v. Rooney,* 399 S.W.2d 225 (Mo.App.1965) and *City of Salisbury v. Nagel,* 420 S.W.2d 37 (Mo.App. 1967).

■ Even if this court were to assume, for purposes of discussion, that the trial court ruled upon the adequacy of appellants' answers to interrogatories, this court feels the imposition of default judgment was still not warranted because of two overriding issues. The first is the easily recognizable fact that the interest of two minor children were involved and the protection of such interest of necessity rested upon the actions of others, to wit, their guardian and guardian's counsel. That courts are and should be particularly solicitous of the protection for and in the interest of minors, see *Fiorella v. Fiorella,* 241 Mo.App. 180, 187, 240 S.W.2d 147, 152 (1951).

The second overriding issue is the question of competency of the guardian and guardian's counsel in the instant case. In all fairness to the trial court, this factor is not perhaps as readily identifiable as the factor of minor child interest, but nonetheless this court, after hearing, removed both the guardian and counsel and named a successor to both. This element cannot be overlooked or removed from this case when reviewing the case in its entirety in retrospect.

There is nothing in this record which suggests a deliberate disregard for the trial court by counsel or the guardian. Rather, the record suggests negligence or lack of due diligence by the guardian and counsel and where such problems manifest themselves as the "culprit" in unsatisfactory discovery matters, the courts are reluctant to dismiss a cause of action "where the attorney has failed to comply with the discovery

order of the court," see *Austin Theater, Inc. v. Warner Bros. Pictures, Inc.*, 22 F.R.D. 302 (S.D.N.Y.1958); *Sapiro v. Hartford Fire Ins. Co.*, 452 F.2d 215 (7th Cir. 1971).

This court concludes that the trial court had other alternatives at its disposal to resolve this matter and that such alternatives should have been explored as opposed to the entry of default judgment against the minor children. Such action as taken by the trial court was an abuse of its discretion.

Appellants' point one is sustained.

The remainder of this appeal addresses the summary judgment entered in the second case (Metropolitan). For purposes of clarity, it is best to summarize the procedural steps which led to the trial court's entry of summary judgment.

A. Haake institutes suit against Metropolitan Life Insurance Company for payment to him of the proceeds of an insurance policy upon the life of Evelyn Haake.

B. Metropolitan counterclaims in the nature of interpleader against Haake and the minor Sermon children.

C. Haake and Sermon answer to the interpleader.

D. Haake files a motion for summary judgment claiming effect of res judicata under Rule 61.01(b) and judgment in the Peoples case.

E. Sermon files a joint motion for continuance and denial of summary judgment alleging refusal of the county prosecutor to allow access by Sermon to the investigation file in the Evelyn Haake murder.

F. Trial court, without a hearing, sustains Haake's motion for summary judgment and orders Metropolitan to pay over the policy proceeds to Haake's counsel.

This court, because of the foregoing developments, is herein presented the general issue as to whether a party who was an interpleader defendant in a previous action can assert a discovery sanction default judgment as or under the doctrine of res judicata in a second action in which he is the plaintiff.

Research reveals the courts of our state have never addressed the precise issue of res judicata as applied to a discovery sanction default judgment under Rule 61.-01(b)(2). In addressing this issue, three questions must be answered. These are:

(1) What is the nature of the res judicata issue as presented by the facts in the instant case?

(2) Is judgment under Rule 61.01(b)(2) a judgment on the merits?

(3) What is the res judicata effect of such judgment, if any?

Res judicata is a doctrine which has arisen in our body of law based upon the accepted determination that there should be an end to litigation. Its basic concept is to put an end to litigation arising from the same subject matter as between the same parties, see *Drennen v. Wren*, 416 S.W.2d 229 (Mo.App.1967); *Cloyd v. Cloyd*, 564 S.W.2d 337 (Mo.App.1978); *St. Louis Typographical Union, No. 8, AFL–CIO v. Herald Co.*, 402 F.2d 553 (8th Cir. 1968).

The doctrine, in more recent times, however, has been more finely defined, and authorities have recognized two distinctions within the doctrine of res judicata. The first of these distinctions is the traditional res judicata which prohibits the same parties from relitigating the same issue of action. The second distinction is what might be called issue preclusion, more commonly referred to as collateral estoppel, and precludes the same parties from relitigating issues previously adjudicated. Our own state courts employ estoppel by verdict in reference to issue preclusion, see *Oates v. Safeco Insurance Co. of America*, 583 S.W.2d 713 (Mo. banc 1979).

■ Within our courts, four concurring elements must be found to support traditional res judicata. These are (a) the identity of the thing sued for; (b) the identity of the cause of action; (c) the identity of the persons or parties to the action, and (d) the identity of the quality of the person for or against whom a claim is made, see *Prentzler v. Schneider*, 411 S.W.2d 135 (Mo. banc 1966).

With these prerequisites in mind, it can be readily observed that res judicata is not applicable to the instant proceedings. This is clear when it is pointed out the first case (Peoples) involved an action filed by the Peoples Home Life Insurance Co. against William Haake and appellant children. The suit was upon an identified life insurance policy issued by Peoples.

The second case was a suit filed by William Haake against the Metropolitan Life Insurance Co., and the appellant minor children were interpled into the action. The second suit was against a different insurance carrier upon a distinct separate policy of insurance.

There was no identity of parties or subject matter between the two suits.

Thus, if the traditional doctrine of res judicata is not applicable, can or should respondent prevail upon the distinction contained within the doctrine? That is, should respondent prevail upon the premise of collateral estoppel or estoppel by verdict? Such a rule operates to prevent a *party* or its *privies* from relitigating facts or questions in issue between the same parties which have been adjudicated upon the merits. This rule holds regardless of whatever form the issues might take in subsequent action, or whether upon the same or different *cause of action*, see *Stadium Bank v. Milton*, 589 S.W.2d 338 (Mo.App.1979) and *Varnal v. Kansas City*, 481 S.W.2d 575 (Mo.App.1972). The issue has been more succinctly put as:

> "The court in reviewing whether the application of collateral estoppel is appropriate should consider: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) *whether the prior adjudication resulted in a judgment on the merits*; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication . . . (citations omitted) . . . Most courts have added a fourth factor to the three enunciated by Chief Justice Traynor in the *Bernhard* case: whether the party

against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Oates v. Safeco Ins. Co. of America, supra* at 719. (emphasis added). See also *Bernhard v. Bank of America National Trust and Savings Assn.*, 19 Cal.2d 807, 122 P.2d 892 (1942).

As *Oates v. Safeco Ins. Co. of America, supra*, points out, for collateral estoppel to be applicable, it must include an assessment of whether the prior judgment was upon the merits. This leads to the second question above, that being whether a sanction default judgment, pursuant to Rule 61.01(b)(2) was in fact a judgment upon the merits.

Respondent argues that the judgment in the *Peoples* case, by way of sanction default, was with prejudice and that the dismissal amounted to a judgment on the merits pursuant to Rule 67.03. Respondent quotes *Max v. Spaeth*, 349 S.W.2d 1 (Mo. 1961) and *Travelers Indemnity Co. v. Chumbley*, 394 S.W.2d 418 (Mo.App.1965) as authority for such proposal.

The position of respondent would remain solidly correct, except for two changes in our law. The first change was the ruling found in *Denny v. Mathieu*, 452 S.W.2d 114, 118–119 (Mo. banc 1970) wherein our Supreme Court, in considering the question of whether dismissal of a case with prejudice pursuant to Rule 67.03 was tantamount to an adjudication upon the merits equivalent to a jury verdict, stated:

> "What does the rule mean when it says that a dismissal with prejudice operates as an adjudication on the merits? We conclude that such dismissal actually adjudicates nothing. What it really does, and what is intended by the rule, is that the *dismissal with prejudice serves as a mechanism for the termination of litigation rather than adjudication of the issues therein involved* . . .
> *To the extent that Max v. Spaeth may be authority for the proposition that a dismissal with prejudice amounts to an adjudication on the merits equivalent in ef-*

fect to a jury verdict, it no longer should be followed." (emphasis added)

The second change in our law was the revision of Rule 67.03 to conform to *Denny v. Mathieu, supra,* the pertinent portion of which reads as follows:

"A dismissal without prejudice permits the party to bring another civil action for the same cause, unless the civil action is otherwise barred. *A dismissal with prejudice bars the assertion of the same cause of action or claim against the same party* . . ." (emphasis added)

Thus, our State Supreme Court has overruled *Max v. Spaeth, supra,* and the line of cases derivative therefrom holding that dismissal pursuant to Rule 67.03 is tantamount to an adjudication of issues upon the merits.

▮ In the instant case, since res judicata is in reality only applicable upon the distinctive element of collateral estoppel, respondent cannot rely upon Rule 67.03 to sustain his position that the sanction default judgment, pursuant to Rule 61.01(b)(2) was a judgment upon the merits, see *Hailey v. Atchison, Topeka and Santa Fe Railway Company,* 579 S.W.2d 739 (Mo. App.1979).

Thus, the foregoing affords an answer to question no. 1 by way of analysis and affords a negative answer to no. 2 above.

Turning attention to the third question, it has already been observed that the only possible application of the doctrine of res judicata would have to be by and through the distinction as collateral estoppel. It has also been observed that the rules of civil procedure, under *Denny v. Mathieu, supra,* do not support the contention that a sanction default pursuant to Rule 61.01(b)(2) is tantamount to a judgment on the merits.

▮ The rules of civil procedure have as their express purpose the securing of just determination of every civil proceeding, see *Butler v. Circulus, Inc., supra,* and Rule 41.03. Where collateral estoppel is asserted, the purpose becomes particularly apposite since a full and fair opportunity to litigate issues in a prior suit is a requisite of the doctrine, see *Oates v. Safeco Ins. Co. of*

America, supra, Johnson v. U. S., 576 F.2d 606, 614 (5th Cir. 1978) and *Cloyd v. Cloyd, supra.* See also IB, Moore's Federal Practice 2d, § 0.444[2] (1974).

▮ The application of collateral estoppel to the discovery sanction default judgment in this case was error (and hence question no. 3 above is answered) because it failed to meet two related criteria. First, the narrow issue addressed by the *Peoples* case was the propriety and completeness of appellants' answers to interrogatories. The matter is, in reality, a trial management problem and cannot be permitted to be construed as an adjudication on the merits permitting the application of collateral estoppel. This is particularly true where, as in the instant case, the trial court conducted no hearing or inquiry relative to appellants' claim that greater specificity in answering interrogatories was impossible and beyond appellants' control. To base collateral estoppel upon a judgment under such circumstances amounted to a misapplication of the doctrine.

Secondly, permitting a litigant to use a procedural judgment in a previous judgment (*Peoples* case) in a subsequent case (*Metropolitan* case) to preclude litigation of substantive issue violates the directives of Civil Rule 41.03 that the rules are to be construed to secure a just outcome. Such application also violates the intent within the doctrine of res judicata and the distinction within that doctrine, collateral estoppel, in that such doctrine is to be applied only after full and fair opportunity to litigate the issues.

From the instant proceedings and the research upon the issues involved, certain conclusions become obvious, which are:

(1) Rule 61.01 allows the trial court discretion to impose sanctions for evasively answering interrogatories and such discretion includes the entry of a dismissal or default judgment.

(2) The actions of the trial court can be reversed if its actions amount to an abuse of discretion.

(3) Application of the default sanctions is a harsh action and should be applied where a party has displayed a contumacious and deliberate disregard for the trial court's authority. (The facts in the instant case fail to support any finding that appellants' conduct was a contumacious and deliberate disregard for the trial court's authority, thus forcing the further conclusion that the trial court abused its discretion.)

(4) The court should be particularly solicitous and protective of the interests of minor children, insuring that cases involving them are decided upon the merits. (In the instant case, the trial court failed to exercise its duty in this regard prior to the imposition of Rule 61.01(b)(2) and such action was an abuse of discretion by the trial court.)

(5) The instant case demands that only issue preclusion (collateral estoppel) be the only possible application of the doctrine of res judicata in the second case (*Metropolitan* case) because the second case involved a different claim, parties and subject matter.

(6) A Rule 67.03 dismissal bars only the assertion of the same cause of action against the same party. It does not apply to collateral estoppel and is not synonymous with a judgment on the merits.

(7) The sanction judgment pursuant to Rule 61.01(b)(2) entered in the first case (*Peoples* case) does not support or warrant entry of summary judgment in the second case (*Metropolitan* case) because there was no judgment on the merits and appellate had no full and fair opportunity to litigate the matter.

The record herein discloses the trial court in the *Peoples* case abused its discretion by entry of sanction default pursuant to Rule 61.01(b)(2) and by virtue thereof, that judgment is reversed and remanded.

The record herein also discloses that the doctrine of res judicata and the distinction within that doctrine, being collateral estoppel, had no application in support of the entry of summary judgment in the second case (*Metropolitan* case) and by virtue thereof, that judgment is reversed and remanded.

For purposes of retrial, these cases are consolidated and remanded to Division No. 11 of the 16th Judicial Circuit.

All concur.